STATE of Wisconsin, Plaintiff-Respondent,

v.

Rodney O. HARRIS, Defendant-Appellant.†

Court of Appeals

*No. 2008AP778–CR. Submitted on briefs November 11, 2008.*
*—Decided November 25, 2008.*

2008 WI App 189

(Also reported in 763 N.W.2d 206.)

† Petition to review denied 2/10/09.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ellen Henak*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.V. Van Hollen*, attorney general and *Warren D. Weinstein*, assistant attorney general.

Before Fine, Kessler and Brennan, JJ.

¶ 1. FINE, J. Rodney O. Harris appeals the circuit court's order reconfining him to prison and directing that there be a period of extended supervision following the period of reconfinement. He also appeals the circuit court's order denying his "postconviction motion" in connection with the reconfinement order. He claims that the circuit court did not have the authority to make a condition of that extended supervision that he have no contact with the latest of his domestic-violence victims. We disagree and, accordingly, affirm.

## I.

¶ 2. Although originally charged with substantial battery as an habitual criminal, *see* WIS. STAT. §§ 940.19(2) & 939.62, the habitual-criminality aspect

539

was dropped and Harris pled guilty to substantial battery. The circuit court sentenced Harris to imprisonment for four years and six months, with an initial confinement of two years, followed by extended supervision for two years and six months. *See* WIS. STAT. § 973.01(1) & (2) (imprisonment is made up of a term of initial confinement followed by a period of extended supervision). The substantial-battery charge was premised on Harris having beaten Tonya B., the mother of his children. As a condition of Harris's extended supervision, the sentencing court directed that he "have no contact with" Ms. B., but allowed him "to have third party contact to arrange for child visitation."

¶ 3. Harris served his period of initial confinement and was released on extended supervision. He did not comply with its conditions and his extended supervision was revoked. Among the violations were absconding from supervision by not only not keeping an appointment with his supervising agent but also by going to West Virginia without a travel permit and without his agent's permission. More serious, when Harris was in West Virginia, he battered and cut a woman with whom he was having a relationship, Emma J., and fought with and injured police officers trying to arrest him.

¶ 4. In accord with WIS. STAT. § 302.113(9)(am), Harris, after being extradited to Wisconsin, was returned to the Milwaukee County circuit court for a reconfinement hearing. As material, § 302.113(9)(am) provides:

> If the extended supervision of the person is revoked, the person shall be returned to the circuit court for the county in which the person was convicted of the offense for which he or she was on extended supervision, and the court shall order the person to be returned to prison

540

for any specified period of time that does not exceed the
time remaining on the bifurcated sentence.

The time remaining on Harris's bifurcated sentence was two years, six months, and five days. Although both the State and the Department of Corrections recommended that Harris be reconfined for that maximum period, the circuit court ordered that he be reconfined for all but four months, with those four months being extended supervision following the reconfinement period. *See* § 302.113(9)(b) ("A person who is returned to prison after revocation of extended supervision shall be incarcerated for the entire period of time specified by the court under par. (am) . . . . If a person is returned to prison under par. (am) for a period of time that is less than the time remaining on the bifurcated sentence, the person shall be released to extended supervision after he or she has served the period of time specified by the court under par. (am).").

¶ 5. The nub of both the reconfinement hearing and the original sentencing, the transcript of which the reconfinement court read, was on Harris's problem with "anger management." Indeed, at the original sentencing, Harris told the sentencing court that he had "been through the system several times," and that he had "a big problem, you know, with temper." Harris told the reconfinement court that he wanted "to get some type of help and focus on my life before someone ends up battered bad."

¶ 6. The reconfinement court recognized Harris's "long history of domestic violence" and opined that what he did to Emma J. in West Virginia was "very serious." Terming the recommendations by both the State and the Department as being "totally appropriate," the reconfinement court nevertheless believed that it would

help Harris cope with his temper problems if there were a period of supervision following his release from prison. Thus, it structured the reconfinement order to permit the four-month period of extended supervision. The reconfinement court also adopted the State's suggestion that "it would be appropriate to add a no-contact order with the victim of the domestic violence" in West Virginia as a condition of extended supervision. Harris's lawyer at the reconfinement hearing objected to the new condition, and, as noted, Harris repeats that objection on this appeal.

## II.

¶ 7. The crux of Harris's complaint about the condition of extended supervision that he not have contact with the woman he battered and cut in West Virginia is that the statutes do not expressly provide for it. Although it is true that there is nothing that says *in haec verba* that the reconfinement court may impose a condition of extended supervision that was not imposed by the original sentencing court (unless the Department or the defendant seeks a modification of the extended-supervision conditions, *see* WIS. STAT. § 302.113(7m)(a) (The defendant "or the department may petition the sentencing court to modify any conditions of extended supervision set by the court.")), the statutes read as a whole clearly give the reconfinement court that authority because they do not prohibit it and that authority is essential to the fulfillment of the dual legislative (and judicial) goal that: (1) the public be protected from a criminal's further predations; and (2) the criminal be helped with his or her rehabilitation.

¶ 8. " 'A reconfinement hearing is certainly akin to a sentencing hearing,' " and, as a result, appellate

review is limited to whether the reconfinement court erroneously exercised its discretion. *State v. Walker*, 2008 WI 34, ¶ 13, 308 Wis. 2d 666, 677, 747 N.W.2d 673, 678 (quoted source omitted). Whether a reconfinement court violates the statutes, however, is subject to our *de novo* review. *See State v. Hall*, 2007 WI App 168, ¶ 7, 304 Wis. 2d 504, 507, 737 N.W.2d 13, 14.

■■

¶ 9. Unless there is an ambiguity or constitutional infirmity, we apply statutes as they are written because that is generally the best evidence of the legislature's intent. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 43–44, 271 Wis. 2d 633, 661–662, 681 N.W.2d 110, 123–124. Provisions that are ambiguous must be interpreted and applied so they are consistent with the statutory scheme in which they appear. *Id.*, 2004 WI 58, ¶ 46, 271 Wis. 2d at 663, 681 N.W.2d at 124 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."); *see also U.S. Bank Nat'l Ass'n v. City of Milwaukee*, 2003 WI App 220, ¶ 8, 267 Wis. 2d 718, 730, 672 N.W.2d 492, 497 ("Obeisance to legislative intent is so important" that we are not constrained by words that if slavishly applied would result in an absurdity that the legislature never envisioned.).

■

¶ 10. As we have seen, WIS. STAT. § 302.113(9)(b) provides that if there is any time left on the defendant's original bifurcated sentence following the incarceration ordered by the reconfinement court, that time is spent on extended supervision. Thus, § 302.113(9)(b) keeps intact the bifurcated-sentence scheme established by

Wɪs. Sᴛᴀᴛ. § 973.01. Aware that it is appropriate to ensure that a person released on extended supervision should have *supervision* and should be subject to conditions conducive to both the public safety and the defendant's rehabilitation, the legislature gave the sentencing court authority to impose conditions of extended supervision: "Whenever the court imposes a bifurcated sentence under sub. (1), the court may impose conditions upon the term of extended supervision." Sec. 973.01(5). Although § 973.01(5) refers to § 973.01(1), which grants circuit courts the power to impose bifurcated sentences, we conclude that it indubitably follows that the reconfinement court has the same authority to impose conditions of extended supervision that follows the period of reconfinement as an original sentencing court has to impose conditions on the extended supervision that follows the period of initial confinement.

¶ 11. First, a reconfinement hearing is not only " 'akin to a sentencing hearing,' " *Walker*, 2008 WI 34, ¶ 13, 308 Wis. 2d at 677, 747 N.W.2d at 678 (quoted source omitted), it *is* a sentencing in the sense that it deprives the defendant of his or her liberty, *see State v. Swiams*, 2004 WI App 217, ¶¶ 17, 22, 277 Wis. 2d 400, 415–416, 418, 690 N.W.2d 452, 459–460, 461 ("[A] hearing to determine whether a person should be sent to prison (or returned to prison) and for how long is a 'sentencing.' ").

¶ 12. Second, as we have seen, the reconfinement procedure specifically recognizes that there may be a period of extended supervision following a reconfinement-ordered incarceration. Wɪs. Sᴛᴀᴛ. § 302.113(9)(b). "[E]xtended supervision is akin to probation." *State v. Agosto*, 2008 WI App 149, ¶ 11, 314

Wis. 2d 385, 393, 760 N.W.2d 415, ___. Therefore, "[c]ase law relating to the propriety of conditions of probation is applicable to conditions of supervision." *State v. Miller*, 2005 WI App 114, ¶ 13 n.3, 283 Wis. 2d 465, 475 n.3, 701 N.W.2d 47, 52 n.3. It has always been recognized that a circuit court may modify conditions of probation at any time. *See* WIS. STAT. § 973.09(3)(a) ("Prior to the expiration of any probation period, the court, for cause and by order, may extend probation for a stated period or modify the terms and conditions thereof."); *State v. Sepulveda*, 119 Wis. 2d 546, 552–562, 350 N.W.2d 96, 99–104 (1984). Thus, "inherent within the probation statute is the judge's authority to effectuate the purposes behind probation." *Id.*, 119 Wis. 2d at 556, 350 N.W.2d at 101. Significantly, although the terms of probation may not be modified to punish a defendant for exercising his or her rights, they *may* be modified to accommodate and account for new circumstances that affect the needs to protect the public and rehabilitate the defendant. *Id.*, 119 Wis. 2d at 557–562, 350 N.W.2d at 101–104.

¶ 13. It makes no sense to say, as does Harris and the Dissent, that the extended supervision following a period of initial confinement imposed under WIS. STAT. § 973.01 may be subject to court-ordered conditions, but that the extended supervision following a period of reconfinement imposed under WIS. STAT. § 302.113(9)(am) may not be subject to court-ordered conditions that reflect changed circumstances. It would also, as we have seen, be contrary to the legislative goals of enabling the circuit court to both protect the public and to facilitate the defendant's rehabilitation. Indeed, that the reconfinement court in reality imposes what is, in effect, a new bifurcated sentence was specifically recognized by the Criminal Penalties Study

Committee, which advised the legislature in connection with Wisconsin's revised sentencing scheme now extant. *See Swiams*, 2004 WI App 217, ¶ 20, 277 Wis. 2d at 416–417, 690 N.W.2d at 460. The then legislative attorney wrote in a Drafter's Note that although "a new draft of the provision did 'not refer to a court giving a person a new bifurcated 'sentence' after revoking [extended supervision],' . . . 'such language is unnecessary because that is essentially what happens by operation of s. 302.113(9), stats.' " *Swiams*, 2004 WI App 217, ¶ 22 n.11, 277 Wis. 2d at 419 n.11, 690 N.W.2d at 461 n.11 (brackets by *Swiams*). Legislative recognition that if there is any time left on the defendant's original bifurcated sentence following the incarceration ordered by the reconfinement court, that time is spent on extended supervision *per force* also recognized that the reconfinement court has the authority in the fulfillment of its "sentencing" responsibilities to fashion the terms of extended supervision to reflect new needs and new dangers.

¶ 14. As *Walker* reminds us:

> In making a reconfinement decision, "we expect that circuit courts will usually consider [the recommendation from DOC,] the nature and severity of the original offense, the [defendant]'s institutional conduct record, as well as the amount of incarceration necessary to protect the public from the risk of further criminal activity, taking into account the defendant's conduct and the nature of the violation of terms and conditions during extended supervision." "The reconfinement period imposed should be the minimum amount that is necessary to protect the public, to prevent depreciation of the seriousness of the offense, and to meet the defendant's rehabilitative needs." Circuit courts may also consider " 'what balance of time between renewed incarceration and further [ ] [ex-

tended] supervision is most likely to protect society and at the same time to facilitate the violator's transition between prison and unconditional freedom.' " Other factors that may be relevant include "consideration of the defendant's record, attitude, and capacity for rehabilitation, and the rehabilitative goals to be accomplished by imprisonment for the time period in question in relation to the time left on the violator's original sentence."

*Id.*, 2008 WI 34, ¶ 17, 308 Wis. 2d at 678–679, 747 N.W.2d at 679 (quoted sources omitted, all but the second set of brackets by *Walker*). The reconfinement court here fully complied with *Walker*'s directive.

¶ 15. Where, as here, a defendant with anger-management problems and a history of domestic violence has his or her extended supervision revoked because of a domestic-violence relapse it makes perfect sense, especially when the original sentence recognized the need to protect the victim of the original domestic-violence episode, for the reconfinement court to seek to protect the new domestic-violence victim by making it a condition of the new period of extended supervision that the defendant have no contact with that new victim. As our long quotation from *Walker* indicates, this is the very core of the reconfinement responsibility the legislature has vested in the circuit courts.

¶ 16. As noted, WIS. STAT. § 302.113(7m)(a) says that "the department may petition the sentencing court to modify any conditions of extended supervision set by the court." Thus, if the Department sees something in its supervision of the defendant that requires an adjustment of the conditions of extended supervision, it can ask the court to make the required adjustment. This can happen at any time, either before or after the

defendant is released on his or her initial extended supervision, or after a reconfinement order following a revocation of that initial period of extended supervision. Therefore, if we were to reverse (or if the circuit court had determined that it lacked the authority to impose a condition of the new period of extended supervision that was designed to protect Harris's new domestic-violence victim), the circuit court would be authorized to impose the same condition on the Department's petition. *See* § 302.133(7m)(c) ("The court may conduct a hearing to consider the petition. The court may grant the petition in full or in part if it determines that the modification would meet the needs of the department and the public and would be consistent with the objectives of the person's sentence."). To require the parties to descend the mountain only to climb it again would, under the circumstances here, result in an "unreasonable and absurd" Sisyphean reading of the interrelated statutes and would violate the important rule of statutory construction that tells us to avoid tortured and twisted wheel-spinning requirements that lack a substantive rationale. *See State ex rel. Kalal*, 2004 WI 58, ¶ 46, 271 Wis. 2d at 663, 681 N.W.2d at 124.

¶ 17. Harris, however, contends that *Hall* requires the opposite result because it held that the reconfinement court did not have the authority to reconsider the original sentencing court's determination that Hall was not eligible for the Challenge Incarceration Program authorized by WIS. STAT. § 973.01(3m). *Hall*, 2007 WI App 168, ¶ 17, 304 Wis. 2d at 511, 737 N.W.2d at 16. The original sentencing court in *Hall* apparently did not consider whether Hall was eligible for the Earned Release Program, authorized by § 973.01(3g). *Hall*, 2007 WI App 168, ¶ 2, 304 Wis. 2d at 506, 737 N.W.2d at 14.

¶ 18. The sentencing court in *Hall* had placed Hall on probation and imposed but stayed a bifurcated sentence of two years of initial confinement and three years of extended supervision. *Ibid.* When Hall's probation was revoked he served his period of initial confinement and was then released on extended supervision. *Ibid.* Hall then committed new crimes and was sentenced for those crimes, with the new sentencing court determining that he was eligible for both the Earned Release and Challenge Incarceration programs. *Id.*, 2007 WI App 168, ¶ 4, 304 Wis. 2d at 507, 737 N.W.2d at 14.

¶ 19. Hall was brought to court for a reconfinement hearing in connection with the revocation of his extended supervision in the first case. *Id.*, 2007 WI App 168, ¶ 3, 304 Wis. 2d at 506–507, 737 N.W.2d at 14. The reconfinement court did not address whether Hall was eligible for the programs, and, later, Hall sought a determination that he was. *Id.*, 2007 WI App 168, ¶¶ 3, 5, 304 Wis. 2d at 506–507, 737 N.W.2d at 14. The reconfinement court then opined that it lacked authority to make that determination. *Id.*, 2007 WI App 168, ¶ 5, 304 Wis. 2d at 507, 737 N.W.2d at 14. As noted, we agreed. *Id.*, 2007 WI App 168, ¶ 17, 304 Wis. 2d at 511, 737 N.W.2d at 16.

¶ 20. In ruling that the reconfinement court lacked the authority to determine whether Hall was eligible for the programs, we noted that the statutory bases for that authority, WIS. STAT. § 973.01(3m) and (3g), provided in each that: "When imposing a bifurcated sentence under this section on a person convicted of a crime" with certain exceptions not material here, "the court shall, as part of the exercise of its sentencing discretion, decide whether the person being sentenced is eligible or ineligible" for the program. In attempting to use *Hall* to bar the reconfinement court from imposing

extended-supervision conditions not originally imposed by the sentencing court, Harris notes that, as we have already seen, § 973.01(5) similarly references the imposition of a bifurcated sentence under subsection (1) of § 973.01: "Whenever the court imposes a bifurcated sentence under sub. (1), the court may impose conditions upon the term of extended supervision." Harris argues that this means that the authority of the reconfinement court to impose a new condition of extended supervision in the reconfinement order is as limited as the authority of the reconfinement court to determine whether the defendant is eligible for the Earned Release and Challenge Incarceration programs. This is a myopic reading of the statutory mosaic.

¶ 21. This case, unlike *Hall*, does not deal with the circuit court's authority to determine whether a prisoner is eligible for programs authorized by the legislature in connection with the imposition of a bifurcated sentence under Wis. Stat. § 973.01(1) but, rather, what conditions are necessary components for the period of extended supervision that the defendant will be serving as a result of a reconfinement decision under Wis. Stat. § 302.113(9)(am) and (b). As *Walker* and its antecedents teach, a reconfinement hearing should meld with the original sentencing and the factors that the original sentencing court deemed significant. *See Walker*, 2008 WI 34, ¶ 19, 308 Wis. 2d at 680, 747 N.W.2d at 679–680 ("The parties are, therefore, encouraged to identify relevant information from the sentencing transcript or any other document and bring it to the circuit court's attention, so the judge may then specifically review that information."); *State v. Brown*, 2006 WI 131, ¶¶ 21, 38, 298 Wis. 2d 37, 50, 58, 725 N.W.2d 262, 268, 272 (Where the sentencing and reconfinement courts are the same, "the reconfinement hearing [is] a

continuum of the sentencing hearing"; where the two courts are not the same, the reconfinement court should seek information about the nature of the original sentencing, including the sentencing transcript, which "is an important source of information on the defendant that discusses many of the factors that circuit courts should consider when making a reconfinement decision."). Thus, it would be *contrary to the original sentencing scheme* for a reconfinement court to overrule a sentencing court's determination that a defendant was not eligible for the Earned Release or Challenge Incarceration programs, *especially* because the defendant in that situation had extended supervision revoked because he or she did something bad while serving the extended-supervision part of the bifurcated sentence. But conditions under which the defendant will be out in the community cannot be frozen in time; indeed, the reconfinement court is especially directed to consider the defendant's adjustment since the date of the original sentencing. *Brown*, 2006 WI 131, ¶ 45, 298 Wis. 2d at 61, 725 N.W.2d at 273 (The reconfinement court should consider the defendant's "institutional conduct record, and the [defendant]'s conduct and the nature of the violation of terms and conditions during extended supervision, as well as the amount of incarceration necessary to protect the public from the risk of further criminal activity."). That the defendant's original extended supervision was revoked underscores the need for the possibility of new, more stringent conditions of the post-reconfinement extended supervision.

¶ 22. There is nothing in either the statutes or in the legislative history that reveals the smallest quantum of intent to deprive the reconfinement court of the authority to set new conditions in connection with the extended-supervision part of the reconfinement order,

especially when those conditions are consistent with the original sentencing scheme and are needed to both protect the public and to enhance the chances of the defendant's rehabilitation. *See Sepulveda*, 119 Wis. 2d at 554, 350 N.W.2d at 101. Stated another way, although the legislature did not specifically say that the reconfinement court, by permitting a period of extended supervision following re-incarceration, may accommodate new circumstances by imposing appropriate new conditions on that new term of extended supervision, the legislature did not prohibit it. Since, as we have seen, the legislature was told by a legislative note of the committee that assisted the legislature in crafting the complex sentencing scheme under consideration, that the revocation of extended supervision triggers a return to the circuit court for "essentially" a "new bifurcated 'sentence,' " *Swiams*, 2004 WI App 217, ¶ 22 n.11, 277 Wis. 2d at 419 n.11, 690 N.W.2d at 461 n.11, the legislature would be fully justified in assuming that the reconfinement court had the same authority to add conditions to the new term of extended supervision as a probation-modification court has authority to modify conditions of probation. As then circuit justice Oliver Wendell Holmes observed, "it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." *Johnson v. United States*, 163 F. 30, 32 (1st Cir. 1908).

¶ 23. Significantly, if Harris were to prevail on this appeal and the Dissent's view became the law, his victory would be Pyrrhic; a reconfinement court might very well eschew a period of extended supervision following the reconfinement term because the reconfinement court could then not adequately protect the

public without the ability to impose necessary conditions reflecting changed circumstances. We affirm.

*By the Court.*—Orders affirmed.

¶ 24. KESSLER, J. (*dissenting*). I agree with the majority's implicit conclusion that the additional condition of extended supervision imposed by the reconfinement court was reasonable and appropriate. I disagree, however, that the plain language of the applicable statutes and applicable case law authorizes a reconfinement court to impose new conditions of extended supervision.

¶ 25. The only statute by which the legislature specifically authorized a *court* to impose conditions of extended supervision is WIS. STAT. § 973.01(5).[1] These conditions are imposed at sentencing. The statute governing extended supervision, WIS. STAT. § 302.113, specifically allows the Department of Corrections to add new conditions to the extended supervision. *See* § 302.113(7) ("The *department* may set conditions of extended supervision *in addition to any conditions* of extended supervision required under s. 302.116, if applicable, or set by the court under sub. (7m) or s. 973.01(5) if the conditions set by the department do not conflict with the court's conditions.") (emphasis added). In addition, the Department or the person subject to the conditions "may petition the *sentencing court* to modify any conditions of extended supervision set by the court." Sec. 302.113(7m) (emphasis added).

¶ 26. Thus, we see that the legislature gave the Department, which supervises extended supervision,

---

[1] WISCONSIN STAT. § 973.01(5) provides: "EXTENDED SUPERVISION CONDITIONS. Whenever the court imposes a bifurcated sentence under sub. (1), the court may impose conditions upon the term of extended supervision."

the flexibility to impose new conditions required by changed circumstances in extended supervision, where the new conditions do not conflict with the original conditions set by the sentencing court.[2] *See* WIS. STAT. § 302.113(7). The legislature also allowed either the Department or the inmate to petition the sentencing court to modify any extended supervision conditions. *See* § 302.113(7m). What the legislature did not do was explicitly authorize a court imposing a period of reconfinement to add additional conditions to extended supervision on its own initiative (or at the suggestion of the State, as occurred here). We previously recognized that a reconfinement court's discretion is limited when we rejected a reconfinement court's attempt to determine a confined person's eligibility for the Challenge Incarceration Program (CIP) or the Earned Release Program (ERP). *See State v. Hall*, 2007 WI App 168, ¶ 15, 304 Wis. 2d 504, 737 N.W.2d 13 (concluding that WIS. STAT. § 302.113(9)(am) gave the reconfinement court a "grant of limited discretion" to "determin[e] the length of time for which a revoked supervisee will be returned to prison" but did not provide authority for a reconfinement court to "address eligibility for CIP and ERP."). For the same reasons we discussed in *Hall*, we should reject the reconfinement court's decision to impose a new condition of extended supervision at the reconfinement hearing.

¶ 27. Reasonable people might conclude that a system allowing either a sentencing court *or* a reconfinement court to impose new conditions of extended supervision is both reasonable and efficient. However,

---

[2] Thus, pursuant to WIS. STAT. § 302.113(7), the Department could have responded to Harris's behavior on extended supervision by imposing the additional restriction at issue in this case.

the legislature limited the discretion of reconfinement courts and any change to the reconfinement court's authority must come from the legislature. We do not have the authority to grant the reconfinement court authority under WIS. STAT. § 302.113(9)(am) which the legislature chose not to grant. *See Seider v. O'Connell*, 2000 WI 76, ¶ 80, 236 Wis. 2d 211, 612 N.W.2d 659 ("It is the role of the legislature to expand, contract, or repeal" statutes.).

¶ 28. Indeed, as the majority notes, Harris's victory might be Pyrrhic if this case were to be returned for a new reconfinement hearing, because it is highly likely the Department would promptly use its statutory authority to impose the same no-contact condition the reconfinement court here imposed. In that situation, Harris would have the right to move the trial court to set aside the condition, should he choose to do so. That is the scheme of condition change and review which the legislature established. We are bound by those legislative decisions.

¶ 29. Because I conclude the plain language of the statutes permits the Department, but not the reconfinement court, to impose new conditions of extended supervision, I respectfully dissent.