**2022 WI App 38**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2021AP809-CR

Complete Title of Case:

**STATE OF WISCONSIN,**

     **PLAINTIFF-RESPONDENT,**

  **V.**

**JUNIOR L. WILLIAMS-HOLMES,**

     **DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | June 15, 2022 |
| Submitted on Briefs: | March 16, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Grogan, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dustin C. Haskell*, assistant state public defender of Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John W. Kellis*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 15, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP809-CR**
STATE OF WISCONSIN

Cir. Ct. No. 2019CF687

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JUNIOR L. WILLIAMS-HOLMES,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1 GUNDRUM, P.J. Junior L. Williams-Holmes appeals from a judgment and order of the circuit court. He contends the court erred in denying his postconviction motion challenging conditions of his probation and extended

supervision (hereinafter collectively referred to as "supervision") that he "not … reside with any member of the opposite sex without the permission of *the Court*, nor reside with any child who is not related to [him] by blood without the permission of *the Court*." (Emphasis added.) Specifically, Williams-Holmes contends these conditions (improperly) grant to the court the role of "administering" his supervision with regard to these conditions while the statutes specifically grant that role to the Department of Corrections (the department). He insists we must "amend" the conditions so that they read that he may not reside with any woman or with a child not related to him by blood without the permission of *the department*.

¶2    Because Williams-Holmes' request would be in conflict with the circuit court's "probationary program" and because the court's supervision conditions as written can be read and implemented in a manner consistent with the law, we uphold them, but we do so with the clarification contained herein. We affirm.

## *Background*

¶3    Williams-Holmes pled guilty to two counts of battery, one count of false imprisonment, and one count of bail jumping, all as a repeater, in connection with domestic abuse he committed against his girlfriend. His sentence included confinement in prison followed by a period of extended supervision, and he was also ordered to serve several years of consecutive probation. The circuit court stated that in light of Williams-Holmes' history of domestic violence, it was ordering as conditions of supervision that he "not … reside with any member of the opposite sex without the *permission of the Court*, nor reside with any child who is not related to [him] by blood without the *permission of the Court*." (Emphasis added.)

2

¶4     In considering whether to separately order that Williams-Holmes have no contact with the victim, the court stated: "I've already put in, in effect, a no contact. He'll *have to come in* and *get approval*." (Emphasis added.) The court also explained to Williams-Holmes that "even though I've restricted your living with children, you can *come back to court* and get *permission* if you show that you're going to be a responsible individual." (Emphasis added.)

¶5     Postconviction, Williams-Holmes moved to amend the judgment of conviction "to require permission from [the department], not the court, before Mr. Williams-Holmes may live with women or children not related to him by blood." In denying Williams-Holmes' motion, the circuit court articulated in a written memorandum that Williams-Holmes "has moved … to transfer from the court to [the department] the authority to *regulate* his residence with women and children unrelated by blood." (Emphasis added.) The court expressed its belief that it had the constitutional authority "to impose conditions *and regulate the behavior* of a probationer." (Emphasis added.) The court also explained that "[i]t was the practices of [the department] which led me initially to impose the requirement for my *approval* of the department's *practice* of residential *placements* of offenders with unrelated children." (Emphasis added.) The court provided a specific "example of how the department even now approaches this issue."

¶6     The example is a 2019 e-mail request from a department probation and parole agent seeking the permission of the circuit court for an offender, who presumably had been recently sentenced by this particular judge, to live at a residence "with his girlfriend of two years … and her 8-year-old son along with [the girlfriend's] adult sister and 20-year-old niece." In its e-mail response denying the agent's request, the court stated in part, "I definitely would not approve the placement which [the department] is proposing without more information," noting

3

that, in a case out of Milwaukee, the offender was sentenced somewhat recently without a presentence report "so there is a substantial information gap about him." The court added, "I must admit I am concerned that [the department] would suggest this 'solution'" and "I have felt for many years that [the department] gives too little attention to the vulnerability of children who are involved in these placements, and does not seem to appreciate the enhanced risk these children are exposed to when placements like this are allowed."[1] Following this example, the court referred to its belief that "supervision" of its "program of probation" is the role of the court.

¶7 On appeal, Williams-Holmes challenges the conditions of supervision the court ordered in this case and the denial of his postconviction motion related to the same.

### *Relevant Statutes*

¶8 WISCONSIN STAT. § 301.03 (2019-20),[2] **General corrections authority**, provides that the *department* shall:

> ....
>
> **(3)** *Administer* parole, *extended supervision*, and *probation matters*, except that the decision to grant or deny parole to inmates shall be made by the parole commission and the decision to revoke probation, extended supervision, or parole, … shall be made by the division of hearings and appeals in the department of administration.

(Emphasis added.)

---

[1] There is no indication that the offender himself was copied on or aware of these communications.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶9 WISCONSIN STAT. § 973.10, **Control and supervision of probationers**, provides:

> **(1)** Imposition of probation shall have the effect of placing the defendant *in the custody of the department* and shall subject the defendant *to the control of the department* under *conditions set by the court* and rules and regulations established by the department for the supervision of probationers, parolees and persons on extended supervision.

(Emphasis added.) And WIS. STAT. §§ 973.01(5), EXTENDED SUPERVISION CONDITIONS, and 973.09(1), **Probation**, respectively provide that when a court imposes a bifurcated sentence, it may "impose conditions upon the term of extended supervision" and when it places a person on probation it may "impose any conditions which appear to be reasonable and appropriate."

¶10 WISCONSIN STAT. § 973.09(3)(a) provides: "Prior to the expiration of any *probation* period, the court, *for cause and by order*, may extend probation for a stated period or *modify* the terms and conditions thereof." (Emphasis added.) And WIS. STAT. § 302.113(7m)(a) provides: "[A] person subject to this section [i.e., the defendant] or the department may *petition* the sentencing court to *modify* any conditions of *extended supervision* set by the court." (Emphasis added.)

### *Discussion*

¶11 As conditions of supervision, the circuit court ordered that Williams-Holmes "not … reside with any member of the opposite sex without the permission of the Court, nor reside with any child who is not related to [him] by blood without the permission of the Court." As indicated, Williams-Holmes insists that these supervision conditions "must be amended to require permission from [the department], not the court." He points out that following the court's sentencing of him, he was placed into the custody and under the control of the department, per

WIS. STAT. § 973.10, and asserts that without adopting his proposed "amend[ment]" to the supervision conditions, the circuit court is left in the position of administering probation and extended supervision matters, contrary to WIS. STAT. § 301.03(3).[3] The State counters that the challenged supervision conditions are authorized by WIS. STAT. §§ 973.09(3)(a) and 302.113(7m)(a) because they amount to little more than the court expressing that in the future the court may be willing to modify the prohibition against Williams-Holmes residing with women and/or with children unrelated by blood if the situation warrants.

¶12    This appeal calls upon us to interpret and apply various statutes. Statutory interpretation and application are matters of law we review de novo. *See Century Fence Co. v. American Sewer Servs*., 2021 WI App 75, ¶8, 399 Wis. 2d 742, 967 N.W.2d 32. Furthermore, in interpreting statutes that are alleged to be in conflict, we must "seek[] to harmonize them through a reasonable construction that gives effect to all provisions." *State v. Reyes Fuerte*, 2017 WI 104, ¶29, 378 Wis. 2d 504, 904 N.W.2d 773. Thus, we will do so.

¶13    In its sentencing comments expounding on the challenged supervision conditions, the circuit court appeared to indicate that its conditions that Williams-

---

[3] Williams-Holmes clarifies in his brief-in-chief that he is "not challenging the [circuit] court's authority to impose a condition limiting his ability to live with women and unrelated children" and, again, that he is "not seeking to overturn" these conditions. In his reply brief, he further adds that the court "was authorized to set a term of supervision limiting Mr. Williams-Holmes' living options" and again notes he "has not challenged the court's discretionary authority to limit his ability to live with women or nonbiological children." Williams-Holmes' concessions work out well as we have already determined that challenged supervision conditions very similar to the ones before us—and ordered by the same judge—were "reasonable and appropriate." *See State v. Luckett*, No. 2009AP2679-CR, unpublished slip op. ¶¶3, 11, 18 (WI App Apr. 21, 2010). While we are not bound by this prior unpublished decision, we do find it persuasive because in *Luckett* we noted that "[t]he circuit court's focus was clearly on the protection of community interests, which is a valid factor in crafting conditions" of supervision, *id.*, ¶11, and similarly in the case now before us, the court imposed the challenged supervision conditions because of Williams-Holmes' "history of domestic violence."

Holmes not reside with any woman and/or with any child not related to him by blood "without the permission of the Court" meant that William-Holmes could not reside with any woman and/or such child unless the court modified the conditions, thereby giving its "permission." Related to *this* understanding of the supervision conditions, the court stated: "I've already put in, in effect, a no contact. He'll have to *come in* and get *approval*." (Emphasis added.) The court further explained to William-Holmes that "even though I've restricted your living with children, you can *come back to court* and get *permission* if you show that you're going to be a responsible individual." (Emphasis added.)

¶14 In its postconviction memorandum, however, the circuit court seemed to indicate that its "without the permission of the court" language was referring to a more informal process of approval and oversight of department decisions related to these supervision conditions as opposed to actual modification of the conditions pursuant to WIS. STAT. §§ 973.09(3)(a) and 302.113(7m)(a). Related to *this* understanding of the supervision conditions, the court referred to its role as one of "regulat[ing]" the "behavior" of a "probationer," including regulating who that probationer resides with during supervision. The court explained that it was the "practices" of the department that led the court to impose its "without the permission of the court" requirement. Referring to a prior case before it, the court provided an example of informal, e-mail oversight the court exercised over a department-agent's "placement" decision as to who the offender in that case could or could not reside with. The court further expressed its belief that "supervision" of its "program of probation" is the role of the court.

¶15 The imposition of conditions of probation and extended supervision are discretionary matters for the circuit court, *State v. Miller*, 2005 WI App 114, ¶11, 283 Wis. 2d 465, 701 N.W.2d 47—who is far more familiar with the particular

offender than we are—and we are to "look for reasons to sustain a circuit court's discretionary decision," *see State v. Muth*, 2020 WI 65, ¶14, 392 Wis. 2d 578, 945 N.W.2d 645. Furthermore, WIS. STAT. §§ 973.09(1) and 973.01(5) "specifically authorize[] the [circuit] court to impose" supervision conditions. *See State v. Linse*, 161 Wis. 2d 719, 725, 469 N.W.2d 201 (Ct. App. 1991). Thus, as we harmonize WIS. STAT. § 301.03(3)'s grant of authority to the department to "administer" supervision matters with § 973.09(3)(a) and WIS. STAT. § 302.113(7m)(a)'s grant of authority to circuit courts to "modify" conditions of supervision, it is important that our application of the court's conditions of supervision be consistent with the general "probationary program" "envisioned" and "ordered" by the court. *See Linse*, 161 Wis. 2d at 724-25 (expressing that in the situation where the department imposes additional conditions on a probationer, "the court is best able to determine whether these additional conditions are consistent with the probationary program envisioned by the court" and holding that where such additional conditions conflict with a court-ordered condition of supervision, the court-ordered condition "will prevail").

¶16    It appears to us that the problem underlying this appeal is that this particular circuit court judge and the department may have previously treated similar "without the permission of the court" language related to similar domestic-abuse-driven conditions imposed by this judge as allowing for a type of informal, situation-by-situation oversight by the court of who an offender may or may not reside with, as opposed to the court requiring its no-residing-with-women-or-children-unrelated-by-blood condition to be modified through the mechanisms of WIS. STAT. §§ 973.09(3)(a) and 302.113(7m)(a).

¶17    If the circuit court's "permission" for William-Holmes to reside with women and/or with children unrelated by blood or with a particular woman and/or

with a particular child unrelated by blood is effectuated through the informal, oversight/"regulation"/"supervision" procedure the court appears to have utilized in at least the prior example it referenced in its postconviction memorandum, this would be unlawful as it would amount to the court usurping the department's statutorily granted authority to "administer" extended supervision and probation "matters." *See* WIS. STAT. § 301.03(3). The court's method for granting its "permission" for an offender to reside with particular individuals as indicated in this memorandum amounts to the court effectively managing, directing, and superintending this supervision condition on a situation-by-situation basis. *See Manitowoc County v. Local 986A, AFSCME, AFL-CIO*, 170 Wis. 2d 692, 698, 489 N.W.2d 722 (Ct. App. 1992) (defining "administer" as "to manage the affairs of … to direct or superintend the execution, use or conduct of" (citing *administer*, WEBSTER'S THIRD NEW INT'L DICTIONARY (1976))). This is the department's role.[4]

¶18 If, however, the court's "permission" to reside with women and/or with children unrelated by blood or with a particular woman and/or with a particular child unrelated by blood is effectuated pursuant to WIS. STAT. §§ 973.09(3) and

---

[4] Our supreme court has previously noted that "the legislature has constitutional authority to offer probation as an alternative to sentencing, the judiciary has authority to impose probation, and the executive branch has the authority to administer probation." *State v. Horn*, 226 Wis. 2d 637, 648, 594 N.W.2d 772 (1999).

> Whether a convicted defendant is sentenced to prison or the circuit court imposes probation, "[t]he adversary system has terminated and the administrative process, vested in the executive branch of the government, directed to the correctional and rehabilitative processes of the parole and probation system has been substituted in its place." The judiciary phase of the criminal process— imposing a penalty—is complete.

*Id.* at 650 (alteration in original; citation omitted). Consistent with WIS. STAT. § 301.03(3), the *Horn* court expressed that administration of probation is "vest[ed]" in the executive branch, *Horn*, 226 Wis. 2d at 650; however, it also recognized that modification of terms and conditions of probation may be accomplished pursuant to WIS. STAT. § 973.09(3)(a). *Horn*, 226 Wis. 2d at 651.

302.113(7m) and the requirements and procedures of those statutes, then such a grant of permission is lawful as it would merely amount to a statutorily authorized modification of the conditions of supervision. For modification of the *probation* conditions, for example, such modification would have to be effectuated pursuant to § 973.09(3), and thus, the modification would need to be "for cause" and made "by order." Modification of the *extended supervision* conditions would have to be effectuated pursuant to § 302.113(7m), which allows for either the offender or the department to "petition" the court "to modify any conditions of extended supervision set by the court" and which contains other procedures and requirements. Absent the court granting "permission" through a modification of the conditions in a manner consistent with these statutory provisions, the conditions prohibiting William-Holmes from residing with any woman and/or with any child unrelated by blood remain in effect.

¶19 We cannot accommodate William-Holmes' request that we simply "amend" the language of the circuit court's supervision conditions from "without the permission of the court" to "without the permission of the department" because such a change would clearly be inconsistent with the probationary program envisioned and ordered by the court. Indeed, the court's chosen language for the conditions themselves as well as other above-identified aspects of the record make it quite clear that in sentencing William-Holmes, the court lacked confidence in the

department's ability and/or willingness to properly administer the no-residing-with-women-or-unrelated-children conditions imposed in this case.[5]

¶20   To harmonize the statutes and do so in a manner consistent with the circuit court's probationary program in this case, which includes restricting who Williams-Holmes may live with for the purpose of protecting the community and rehabilitating Williams-Holmes, *see* ***State v. Sepulveda***, 119 Wis. 2d 546, 554-55, 350 N.W.2d 96 (1984) (identifying that "the dual purposes of probation [are] rehabilitating the defendant and protecting society"), we hold that the "permission" of the court for Williams-Holmes to reside with a woman or with a child not related by blood, if given, is to be granted by the court through the means of an actual modification of the supervision conditions via WIS. STAT. §§ 302.113(7m) and 973.09(3) and the procedures and requirements related to those statutes.   Our holding today is consistent with case law.

---

[5] We note that in a summary order issued a year ago, we granted a defendant's request to amend the circuit court's nearly identical supervision-condition language from "without court's permission" to "without permission of the supervising agent." ***State v. Exson***, No. 2020AP411-CR, unpublished op. and order at *5 n.3 (WI App June 9, 2021).  A significant difference between that case and this one is that in ***Exson*** the State agreed with the defendant's request for this change, stating in its briefing:

> [I]f the circuit court insists on requiring [the defendant] to seek permission to live with women or minor children (as opposed to ordering a condition that would simply bar [the defendant] from living with women or children for the duration of his extended supervision), the condition should be amended only to reflect that [the defendant] must seek the permission of the Department of Corrections, rather than the circuit court.

The State has taken a very different, adversarial position in the case now before us and in doing so also developed legal arguments in support of its position.

¶21    In *Sepulveda*, our supreme court reflected on "the probation statute, particularly [WIS. STAT. §] 973.09(3)(a) addressing the court's power to extend probation or modify its terms" and then expressed that "inherent within the probation statute is the court's *continued power* to effectuate the dual purposes of probation, namely, rehabilitating the defendant and protecting society, *through* the court's *authority to modify* or extend *probationary terms*."[6] *Sepulveda*, 119 Wis. 2d at 554 (emphasis added). Thus, our supreme court recognized that the circuit courts do have continuing power, even after sentencing, to effectuate the purposes of probation, but indicated that this power is to be exercised "through" the statutory authority to modify the terms and conditions of probation, namely § 973.09(3)(a).

¶22    Similar to *Sepulveda*, in *State v. Hays* we stated

> [t]he theory of probation envisions that an individual convicted of a crime who is responsive to supervision and guidance may be rehabilitated without placing him or her in prison. To achieve this theory a [circuit] court is permitted to impose conditions of probation that are designed to rehabilitate the probationer and protect society. Inherent in the probation statute is a *continuing power* in the [circuit] court to accomplish the theory of probation *through* the court's *authority to modify the terms of probation*.

*State v. Hays*, 173 Wis. 2d 439, 445, 496 N.W.2d 645 (Ct. App. 1992) (second and third emphasis added; citations omitted). This statement came immediately after our quotation of the WIS. STAT. § 973.09(3)(a) language: "Prior to the expiration of any probation period, the court, for cause and by order, may extend probation for a stated period or modify the terms and conditions thereof." *Id.* Our statement related to the "continuing power" of the circuit court to accomplish the stated "theory of

---

[6] We have previously clarified that "[e]xtended supervision is akin to probation" and "[t]herefore, 'case law relating to the propriety of conditions of probation is applicable to conditions of supervision.'" *State v. Harris*, 2008 WI App 189, ¶12, 315 Wis. 2d 537, 763 N.W.2d 206 (citations omitted).

probation" did not suggest that a circuit court has the authority to engage in some sort of informal, situation-by-situation oversight of a defendant on supervision but instead indicated, like the *Sepulveda* court did, that this continuing power is exercised "through" the statutory mechanism of § 973.09(3)(a) for modifying a condition of probation. *See Hays*, 173 Wis. 2d at 445 (emphasis omitted).

¶23 For the foregoing reasons, we affirm the circuit court, but clarify that "permission" for William-Holmes to reside with women and/or with children unrelated by blood or with any particular woman and/or with any particular child unrelated by blood must be effectuated "through" WIS. STAT. §§ 973.09 and 302.113.

*By the Court.*—Judgment and order affirmed.