# Supreme Court of Wisconsin

| | |
|---|---|
| CASE No.: | 2021AP809-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>      Plaintiff-Respondent,<br>   v.<br>Junior L. Williams-Holmes,<br>      Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 404 Wis. 2d 88,978 N.W.2d 523
PDC No:2022 WI App 38 - Published

| | |
|---|---|
| OPINION FILED: | June 20, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 23, 2023 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Kenosha |
| JUDGE: | Bruce E. Schroeder |

JUSTICES:
HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion in which ROGGENSACK and REBECCA GRASSL BRADLEY, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Dustin C. Haskell,* assistant state public defender. There was an oral argument by *Dustin C. Haskell,* assistant state public defender.

For the plaintiff-respondent, there was a brief filed by *John W. Kellis,* assistant attorney general, with whom on the

brief was *Joshua L. Kaul,* attorney general. There was an oral argument by *John W. Kellis,* assistant attorney general.

**2023 WI 49**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP809-CR
(L.C. No. 2019CF687)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

  **v.**

**Junior L. Williams-Holmes,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**JUN 20, 2023**

Sheila T. Reiff
Clerk of Supreme Court

HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion in which ROGGENSACK and REBECCA GRASSL BRADLEY, JJ., joined.

REVIEW of a decision of the Court of Appeals. *Reversed and remanded.*

¶1 BRIAN HAGEDORN, J. This case concerns a challenge to a condition of extended supervision and probation that prohibited Junior Williams-Holmes from living with any women or unrelated children without the permission of the Court. Williams-Holmes moved for postconviction relief, asking the circuit court to transfer the approval power from the circuit court to the Department of Corrections (DOC). The circuit court

denied the motion, and suggested that it had the power to supervise Williams-Holmes through case-by-case approval.

¶2 The question before us is whether the circuit court had the authority to do so. Wisconsin law empowers circuit courts to impose conditions of extended supervision and probation and to modify those conditions through a formal statutory process. However, actual administration of the sentence and conditions is entrusted to DOC.

¶3 In this case, we conclude that the circuit court likely stepped over the line. It all but said it intended to administer Williams-Holmes' condition through case-by-case oversight, which it cannot do. Therefore, we reverse and remand the cause to the circuit court for it to either clarify how the condition imposed is consistent with the law or to modify its order accordingly.

## I. BACKGROUND

¶4 While on probation for a felony battery conviction, Williams-Holmes physically assaulted his girlfriend. The State brought charges and he eventually pled guilty to two counts of battery, one count of false imprisonment, and one count of bail jumping, each as a repeat offender. On the battery charges, the circuit court[1] imposed consecutive sentences consisting of one year of initial confinement and one year of extended

---

[1] The Honorable Bruce E. Schroeder of the Kenosha County Circuit Court presided.

2

supervision. The court withheld sentence on the bail jumping and false imprisonment charges, ordering probation for three years to be served consecutive to his sentences on the battery charges.[2] On both the extended supervision and probation periods, the court imposed a condition that Williams-Holmes could not live with any women or unrelated children without the permission of the Court.[3]

¶5 Williams-Holmes moved for postconviction relief. He asked the circuit court to amend the judgment of conviction to require that permission to reside with women or unrelated children must come from DOC, not the court.

¶6 The circuit court denied the motion. The court explained that it "was the practices of the Department of Corrections which led me initially to impose the requirement for my approval of the department's practice of residential placements of offenders with unrelated children." To show an example of what it saw as DOC's past "practice," the court attached a 2019 email exchange between a DOC probation and parole agent and the court. In the example, the court had imposed a similar condition as in Williams-Holmes' case——the defendant could not "reside with children unless he received

---

[2] The circuit court ordered probation for two years on the bail-jumping count and three years on the false imprisonment count concurrent to one other.

[3] The Judgment of Conviction stated: "Do not reside with any person in any place in which children reside unless you are related to them by blood w/o Court's permission. Not to reside w/ anyone of the opposite sex w/o Court's permission."

permission from the Court." The agent emailed the court to ask if it would allow the defendant to live at his girlfriend's residence with her and several of her family members, including her young son. In an email response, the court said no. It explained that it "would not approve the placement which DOC is proposing without more information" because of the defendant's history of violence and drug use. This email chain illustrated why the court believed DOC's practices were "incompatible with the 'program of probation envisioned by the court.'" Therefore, the court declined to transfer the authority to regulate Williams-Holmes' residential placements to DOC.

¶7 Williams-Holmes appealed. In a thoughtful opinion with which we largely agree, the court of appeals observed that the circuit court's condition could be administered in one of two ways. State v. Williams-Holmes, 2022 WI App 38, ¶¶17-18, 404 Wis. 2d 88, 978 N.W.2d 523. The condition could be effectuated "through the informal, oversight/'regulation'/'supervision' procedure that the [circuit] court appears to have utilized" in the past. Id., ¶17. This would not be lawful, however. Id. Alternatively, the condition could be effectuated consistent with the law through the statutorily authorized modification process. Id., ¶18. The court of appeals then construed the condition as referring only to the statutory modification process and affirmed the circuit court's decision on the postconviction motion on that basis. Id., ¶23. We granted Williams-Holmes' petition for review.

4

## II. DISCUSSION

¶8 Circuit courts are granted broad authority to hold those convicted of crimes accountable for their actions——including discretion to impose conditions on extended supervision and probation. Wis. Stat. §§ 973.01(5) (2021-22);[4] 973.09(1)(a); State v. Oakley, 2001 WI 103, ¶12, 245 Wis. 2d 447, 629 N.W.2d 200. The question in this case, however, is whether the circuit court's condition transgressed DOC's statutory authority to administer extended supervision and probation. Statutory interpretation is "a question of law we review independently." Doubek v. Kaul, 2022 WI 31, ¶3, 401 Wis. 2d 575, 973 N.W.2d 756.

¶9 When a defendant is sentenced to probation, Wis. Stat. § 973.10(1) states that this has "the effect of placing the defendant in the custody of" DOC, and the defendant is under the "the control of the department under conditions set by the court and rules and regulations established by" DOC. Under this statutory structure, then, the court can impose probation and place conditions upon it, but control over the defendant and administration of the terms of probation are carried out by DOC.

¶10 A circuit court may also sentence someone to prison, which includes a mandatory period of extended supervision following confinement. Wis. Stat. § 973.01. As with probation, "the court may impose conditions upon the term of extended

---

[4] All subsequent references to the Wisconsin Statutes are to the 2021-22 version.

supervision." § 973.01(5). And DOC "may not discharge a person who is serving a bifurcated sentence from custody, control and supervision until the person has served the entire bifurcated sentence." § 973.01(7). The structure here also places the power to sentence with the court, but supervision, custody, and control thereafter belongs to DOC.

¶11 The broad statutory authority given to DOC in Wis. Stat. ch. 301 confirms this. It is DOC that "shall . . . Administer" extended supervision and probation. Wis. Stat. § 301.03(3). The legislature chose its words carefully. "Administer" means to "have charge of; manage." Administer, The American Heritage Dictionary of the English Language 22 (3d ed. 1992). This naturally and logically includes not just administering DOC's own rules and conditions,[5] but those set by the circuit court as well.

¶12 While the circuit court is not involved in the day-to-day administration of probation or extended supervision, its role is not necessarily extinguished. The statutes also provide that conditions imposed by the court for both extended supervision and probation are not set in stone; they can be modified. See Wis. Stat. §§ 302.113(7m)(a); 973.09(3)(a). This

---

[5] DOC has established standard rules all defendants on extended supervision or probation must comply with. See Wis. Admin. Code § DOC 328.04(3) (Oct. 2019). For example, defendants must obtain permission from a probation agent prior to changing their residence or place of employment, traveling out of state, purchasing a car, or borrowing money. § DOC 328.04(3)(h)-(k).

occurs via a formal process. A party seeking "to modify any conditions of extended supervision set by the court"——and modification can be requested by DOC or the person subject to extended supervision——"may petition the sentencing court" to do so. § 302.113(7m)(a). The statute then provides various processes, standards, and restrictions governing the sentencing court's consideration of the petition.[6] Ultimately, the court can grant the petition only "if it determines that the modification would meet the needs of the department and the public and would be consistent with the objectives of the person's sentence." § 302.113(7m)(c). Similarly, a court "may extend probation for a stated period or modify the terms and conditions thereof" before the expiration of the probation period. § 973.09(3)(a). However, the extension or modification of conditions can only occur "for cause and by order." Id.

¶13 With this in view, we turn to the present dispute: whether the circuit court lawfully imposed the condition that Williams-Holmes could not live with any unrelated women or children without the permission of the Court. The court of appeals acknowledged the possibility that this condition could either refer to a type of supervision the statute entrusts to DOC, or to the statutorily permitted modification process. Williams-Holmes, 404 Wis. 2d 88, ¶¶17-18. But to "harmonize the statutes and do so in a manner consistent with the circuit

---

[6] For example, the statute makes provision for victim notification (Wis. Stat. § 302.113(7m)(b)) and a hearing on the petition (§ 302.113(7m)(c)).

7

court's probationary program," the court of appeals affirmed the circuit court and determined that Williams-Holmes can only receive the permission of the circuit court through statutory modification. Id., ¶¶20, 23.

¶14 We take a different approach. While we agree with the court of appeals' analysis of the statutory scheme, the record strongly suggests the circuit court intended to administer this condition of supervision itself, and not leave future permission to a statutorily authorized modification. In its postconviction explanation, the circuit court appears to have envisaged Williams-Holmes (or a probation or parole agent) communicating with the court directly and as needed to obtain the necessary approval for him to live with a woman or an unrelated child. This would constitute impermissible supervision and administration of the conditions of probation by the court, which the legislature has entrusted to DOC. The affirmation of the condition by the court of appeals therefore seems at odds with the circuit court's own explanation.[7] Therefore, we reverse and remand the cause to the circuit court to afford it an opportunity to either clarify how the condition imposed is consistent with the law or to modify its order accordingly.

---

[7] In the dissent's telling, the circuit court clearly intended for its "permission" to come only via statutory modification. Dissent, ¶¶15, 19. Yet no one other than the dissent reads the record that way. The court of appeals does not suggest this. Even the State acknowledged during oral argument it was unclear. In any event, if the dissent's interpretation of the condition is correct, our remand order allows the circuit court to say so.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶15 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting).* I dissent because I would simply affirm the court of appeals' well-reasoned decision. It correctly interpreted the circuit court's condition as referring to the statutory modification process. Though the circuit court's use of the phrase "court permission" in the conditions of extended supervision appears ambiguous, the record shows that the court was referring to the statutory modification process under Wis. Stat. §§ 973.09(3)(a) and 302.113(7m), which involves a hearing and modification by order. The circuit court's order denying post-conviction relief, beyond citing § 973.09(3)(a), alludes to aspects of the modification process. This shows that the circuit court intended for "court permission" to be effectuated through that statutory process. Accordingly, as the court of appeals concluded, the circuit court's condition is lawful, and we should affirm the court of appeals' decision.

¶16 The majority provides a rather cursory interpretation of the circuit court's order setting conditions for extended supervision. A more careful reading reveals that the court's envisioned probationary program conforms to the law. The phrase "court permission" in the conditions of extended supervision refers to the modification process.

¶17 We interpret a circuit court's order independently, "look[ing] to the whole of the decision which was reduced to judgment." Schultz v. Schultz, 194 Wis. 2d 799, 806, 535 N.W.2d 116 (1995). "A court interprets a judgment in the same manner as other written instruments." Jacobson v. Jacobson, 177

1

Wis. 2d 539, 546, 502 N.W.2d 869 (Ct. App. 1993). "Only when judgments are ambiguous is construction permitted, allowing the court to consider the whole record . . . ." Id. at 547. "Ambiguity exists where the language of the written instrument is subject to two or more reasonable interpretations, either on its face or as applied to the extrinsic facts to which it refers." Schultz, 194 Wis. 2d at 805-06. However, "[w]e defer to a trial court's interpretation of its own ambiguous order as long as it is a reasonable interpretation." Thorp v. Town of Lebanon, 225 Wis. 2d 672, 683, 593 N.W.2d 878 (Ct. App. 1999).

¶18 The circuit court's order contains the condition, "Do not reside with any person in any place in which children reside unless you are related to them by blood [without] Court's permission." The order also restates this condition as follows: "[n]ot to reside with anyone of the opposite sex [without] Court's permission." The circuit court's order does not clearly explain what "court permission" means. At a high level, it is plain that the condition prevents Williams-Holmes from residing with unrelated women or children unless the circuit court affirmatively permits him to do so. But the condition is silent as to what form this "court permission" must take. As the court of appeals observed, the condition is ambiguous regarding whether "court permission" means "a type of informal, situation-by-situation oversight by the court" or "modifi[cation] through the mechanisms of Wis. Stat. §§ 973.09(3)(a) and 302.113(7m)(a)." State v. Williams-Holmes, 2022 WI App 38, ¶16, 404 Wis. 2d 88, 978 N.W.2d 523.

2

¶19 The circuit court's order denying Williams-Holmes' motion for post-conviction relief clarifies that "court permission" refers to the statutory modification process. For background, two statutes cover modification of probation conditions: Wis. Stat. § 973.09(3)(a), which discusses the court's ability to modify conditions on its motion; and Wis. Stat. § 302.113(7m), which discusses a defendant's ability to petition the court for modification. Under § 973.09(3)(a), "[p]rior to the expiration of any probation period, the court, for cause and by order, may extend probation for a stated period or modify the terms and conditions thereof." A criminal defendant may also "petition the sentencing court to modify any conditions of extended supervision set by the court." § 302.113(7m)(a). "The court may conduct a hearing to consider the petition." § 302.113(7m)(c). The court may also "provide notice of the petition to a victim of a crime committed by the person who is the subject of the petition." § 302.113(7m)(b). At the hearing, the court determines whether "modification would meet the needs of the [DOC] and the public and would be consistent with the objectives of the person's sentence." § 302.113(7m)(c). If the defendant instead seeks modification to the term of a bifurcated sentence, the defendant must prove "by the greater weight of the credible evidence" that modification would serve the public interest. § 302.113(9g)(e).

¶20 The circuit court's order denying post-conviction relief confirms that "court permission" refers to the statutory modification process. In fact, the order expressly references

3

the circuit court's ability to modify conditions by order. It cites our decision in State v. Gray, 225 Wis. 2d 39, 590 N.W.2d 918 (1999), and notes that decision "held 'that Wis. Stat. § 973.09(3)(a) allows circuit courts to modify conditions of probation at any time'" (quoting id. at 69). Additionally, while discussing how the circuit court "began to cite governmental statistical data which [the court] felt clearly justified these conditions," the court noted "the burden is on the offender, not [the court], to prove the inaccuracy of the information." This burden the order references most reasonably seems to be the defendant's burden of persuasion under Wis. Stat. § 302.113(9g)(e) to prove that modification "would serve the public interest."

¶21 The majority's conclusory assertion that "the record strongly suggests the circuit court intended to . . . not leave future permission to a statutorily-authorized modification" appears to be based on an email the circuit court included in its order to illustrate the court's displeasure with the Department of Corrections ("DOC"). Majority op., ¶¶7, 14. This email does not serve as an example of the procedure for obtaining "court permission" the circuit court envisioned. Quite to the contrary, the circuit court disapproved of nearly every aspect of the email.

¶22 The circuit court included the email in its order as "one example of how [DOC] even now approaches this issue." The first email was sent from DOC to the circuit court asking whether the court "[w]ould . . . be willing to" permit a

4

defendant serving probation to live with the defendant's girlfriend as well as her son and adult sister. In its response, the circuit court remarked on the "substantial information gap about" the defendant and said the court "definitely would not approve the placement which DOC is proposing without more information." The court further stated it "would also want to hear the opinion of the child's father, if available, so [the court can be made] sure that he understands the history of the man living with his child."

¶23 The circuit court hardly offered this email as an example of what it meant by "court permission." The reason the court included the email in its order was to demonstrate why the court disapproved of DOC's practices. Its purpose was not to demonstrate the form of "court permission" the court envisioned. The majority reads far too much into the email's inclusion in the order. To the extent the email does reveal what the court meant by "court permission," it shows that the circuit court disapproved of how DOC raised the matter. The circuit court's stated concerns about needing "more information" and possibly hearing from the child's father indicate that the court expected to—and quite likely normally does—hold a hearing on whether to grant permission consistent with the statutory modification process.

¶24 Our process for interpreting a circuit court's order yields a clear result: "court permission" as used in the conditions of extended supervision refers to the statutory modification process. But the majority eschews this task in

5

favor of remanding with direction for the circuit court to clarify what is already clear. Not only is this remedy inappropriate and unnecessary, but none of the parties requested it. Williams-Holmes requested reversal "and remand with instructions that the judgment of conviction be modified to require [Williams-Holmes] to obtain <u>agent</u> permission." The State asked that we affirm the court of appeals and, at oral argument, pointed out that the circuit court could modify or clarify the condition on its own motion anyway "without . . . a needless remand."

¶25 By failing to interpret the circuit court's condition and imposing a remedy nobody requested, the majority turns its ruling into an advisory opinion. This court will normally not "assume various hypothetical states of fact and determine [lawfulness] prospectively under each of these states of fact." <u>Waukesha Mem. Hosp., Inc. v. Baird</u>, 45 Wis. 2d 629, 643, 173 N.W.2d 700 (1970). That is exactly what the majority does here. The opinion is unmoored from any concrete facts being declared lawful or unlawful. It abstractly declares the law and tells the parties to go forth and apply it to whatever the facts may be. I would fully resolve the case at hand, which is what we agreed to do when we accepted review.

¶26 The court of appeals got this case exactly right, but the majority adds confusion to the law by reversing a decision with which it agrees. The circuit court intended for "court permission" to be effectuated through that statutory process, which both the court of appeals and the majority agree is

6

lawful. Accordingly, we should affirm the court of appeals' decision.

¶27 For the foregoing reasons, I respectfully dissent.

¶28 I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and REBECCA GRASSL BRADLEY join this dissent.