STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Clayborn L. WALKER,
Defendant-Appellant.

Supreme Court

*No. 2006AP562–CR. Oral argument January 16, 2008.
—Decided May 1, 2008.*

2008 WI 34

(Also reported in 747 N.W.2d 673.)

668

For the plaintiff-respondent-petitioner the cause was argued by *Stephen W. Kleinmaier*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant there was a brief by *Amelia L. Bizzaro* and *Henak Law Office, S.C.,* Milwaukee, oral argument by *Amelia L. Bizzaro.*

An amicus curiae brief was filed by *Randall Paulson,* assistant state public defender, with whom on the brief was *Nicholas Chiarkas,* state public defender.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published court of appeals' decision,[1] which reversed Walker's two year reconfinement order imposed by the Milwaukee County Circuit Court, John A. Franke, Judge. The court of appeals determined that the reconfinement hearing was defective because nothing in the record indicates that Judge Franke, who did not originally sentence Walker, reviewed the original sentencing transcript in full.

¶ 2. This appeal presents the following question: Did this court create a per se rule in *State v. Brown*[2] that a circuit court judge must review the original sentencing transcript before reconfining a defendant? Walker argues that the court of appeals properly interpreted *Brown* and pre-*Brown* decisions to conclude that when the sentencing judge and reconfinement judge are different, the original sentencing transcript must be read prior to the reconfinement hearing. The State, on the other hand, argues that *Brown* did not establish a per se requirement.

¶ 3. We agree with the State and conclude that *State v. Gee*[3] misinterpreted our decision in *Brown*. We

---

[1] *State v. Walker,* 2007 WI App 142, 302 Wis. 2d 735, 735 N.W.2d 582.

[2] *State v. Brown,* 2006 WI 131, 298 Wis. 2d 37, 725 N.W.2d 262.

[3] *State v. Gee,* 2007 WI App 32, 299 Wis. 2d 518, 729 N.W.2d 424.

conclude that a circuit court is not required to read the original sentencing transcript in every reconfinement hearing. Rather, the circuit court should be familiar with the particulars of the case at issue. That can be accomplished in any number of ways, and we acknowledge that this may differ from case to case. As articulated in *Brown,* the circuit court must decide which factors are relevant for consideration in any given case, and the circuit court must use its discretion as to how it ascertains the information needed to consider the relevant factors. Accordingly, we reverse the court of appeals' decision in this case and overrule *Gee.*

I

¶ 4. The underlying facts are neither relevant to this decision nor are they in dispute. In short, however, Walker and another person confronted a man at gun point in an effort to take the man's car. Their attempt to take the car was unsuccessful, but they did flee the scene with the victim's car keys. Walker was subsequently apprehended and charged with armed robbery. Walker pled guilty to armed robbery with use of force as a party to a crime contrary to Wis. Stat. §§ 943.32(2), 939.05 (2001–02)[4] before the Milwaukee County Circuit Court, Jean W. DiMotto, Judge. Judge DiMotto sentenced Walker to six years imprisonment—two years of initial confinement and four years of extended supervision. Just weeks after his release to extended supervision, Walker committed a number of violations that prompted the Department of Corrections (DOC) to revoke his extended supervision.

---

[4] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

¶ 5.  Walker then appeared before Judge Franke for a reconfinement hearing pursuant to Wis. Stat. § 302.113(9)(am). At the outset of the hearing, the circuit court indicated that it had reviewed the "Court Memo" prepared by a "Probation/Parole Agent" from the Department of Corrections. The court memo contained information pertinent to reconfinement such as: the relevant dates including the date of the offense, conviction, and release to extended supervision; Walker's violations of extended supervision; a *Plotkin*[5] analysis; justifications for reincarceration; and a discussion of the underlying crime, institutional conduct record, and conduct while on extended supervision. The department's memo recommended two years of reincarceration.

¶ 6.  At the reconfinement hearing, the prosecutor informed the circuit court of Walker's prior juvenile record, past history regarding Walker's childhood, and that the State was in agreement with the agent's recommendation of two years of reconfinement. Walker's counsel agreed that a message needed to be sent to Walker, but he argued for eight to twelve months of reincarceration. He informed the circuit court of Walker's poor relationship with his agent and described the struggles Walker faced when being released from prison, such as no job, no money, and no phone service for electronic monitoring. Walker then spoke on his own behalf.

¶ 7.  In concluding that two years reconfinement was warranted, the circuit court discussed the following points in making the record at the reconfinement hearing:

[5] *See State ex rel. Plotkin v. DHSS*, 63 Wis. 2d 535, 544–45, 217 N.W.2d 641 (1974) (adopting ABA guidelines that established the duties of an administrative body and factors to be considered when exercising discretion to revoke probation).

- Walker's conflict with his agent: "When your agent says you have to do something, you have to do it. Whether you like your agent, whether your agent is polite about it, whether your agent even handles it well or not, you have to put up with it."

- Walker's underlying crime was "serious."

- The neglect Walker suffered throughout his childhood, which, the circuit court surmised, "ha[d] something to do with the juvenile difficulties you had and now the adult difficulties you're having."

- Absconding was not a solution to whatever difficulties Walker was having with his agent. "You served two years. You got out and you blew it immediately and you blew it in a big way. You didn't commit a new offense, at least no major offense, and there is no case pending. But short of committing a new crime, you blew it about as much as a person can."

*State v. Walker*, 2007 WI App 142, ¶ 24, 302 Wis. 2d 735, 735 N.W.2d 582.

¶ 8.   The circuit court concluded that a "message has to be sent and anything less than half of the reconfinement time would be insufficient." *Id.*

¶ 9.   Walker moved the court for post-conviction relief. He asserted a number of theories for relief: the circuit court's consideration of inaccurate information, the court's sentence was unduly harsh, his counsel was ineffective, the circuit court failed to review the initial sentencing transcript, and Walker set forth a "new factor" which warranted a modification of reconfinement. In a written decision, the circuit court denied Walker's post-conviction motion. The circuit court wrote:

The defendant is correct that the record does not reflect whether I had reviewed the initial sentencing transcript or was specifically aware of his mental health history. It was my general reconfinement practice to review at least the judges' sentencing comments.

I would sometimes review more of the transcript depending on the particular circumstances of the case and the arguments advanced by counsel. I do not recall whether I reviewed this particular transcript and note that Judge DiMotto's sentencing remarks did not reference the mental health background.

*Id.*, ¶ 25.

¶ 10. The circuit court, citing to *State v. Jones*,[6] reasoned that it was not required to review the original sentencing transcript prior to the reconfinement hearing. Additionally, the circuit court stated that it had now reviewed the sentencing transcript and concluded that modification was not warranted.

¶ 11. The court of appeals consolidated two appeals brought by Walker. The first appeal was in regard to a denial of Walker's petition for writ of habeas corpus. We, however, are not reviewing that decision. In the second appeal, Walker asserted that the circuit court erred by failing to consider or read the original sentencing hearing transcript. The court of appeals reversed the circuit court's decision and stated:

Although we conclude that the circuit court did not erroneously exercise its discretion, this court has held in a decision ordered published on February 28, 2007, [*Gee*], that *Brown did* create a *per se* rule, even though *Brown* itself did not so treat its suggestion that reconfinement courts 'should consider' the original sentencing transcript. We are bound by *Gee*. We respectfully seek clarification from the supreme court as to whether it intended to create a *per se* rule, as *Gee* held, or whether, as we now conclude, it did not.

*Id.*, ¶ 30 (citations omitted).

---

[6] *State v. Jones*, 2005 WI App 259, 288 Wis. 2d 475, 707 N.W.2d 876.

675

¶ 12. Judge Kessler concurred and wrote that *Brown* did create a per se rule that required circuit courts to review the original sentencing transcripts at reconfinement hearings. Judge Kessler remarked:

> As we observed in *Gee,* "[i]n *Brown,* the court . . . imposed on trial courts the requirement that they 'provid[e] reasoned explanations for reconfinement decisions.' " To provide those reasoned explanations, the court in *Brown* discusses a number of factors that may be relevant, and explains "[t]hese factors are not a mandatory checklist, and we do not hold that a circuit court must examine each factor on the record in every case." The *Brown* court then explains what is important to review in order to examine the relevant factors:

> The original sentencing transcript is an important source of information on the defendant that discusses many of the factors that circuit courts should consider when making a reconfinement decision. The original sentencing transcript is readily available for a circuit court to examine, and those portions that are considered by the court to be relevant should be mentioned.

> One can only wonder how a reconfinement judge who did not impose the original sentence could comply with the supreme court's clear instruction to examine the relevant factors the court described in *Brown,* much less mention those portions of the sentencing transcript which are relevant to those factors, unless the sentencing transcript has been reviewed.

*Walker,* 302 Wis. 2d 735, ¶ 34 (Kessler, J., concurring) (internal citations and emphasis omitted).

## II

¶ 13. Interpretation of our own case law presents a question of law that we review de novo. *State v. Krawc-*

*zyk,* 2003 WI App 6, ¶ 10, 259 Wis. 2d 843, 657 N.W.2d 77. "The standards governing appellate review of an imposed sentence are well settled. A circuit court exercises its discretion at sentencing, and appellate review is limited to determining if the court's discretion was erroneously exercised." *State v. Brown,* 2006 WI 131, ¶ 19, 298 Wis. 2d 37, 725 N.W.2d 262 (citing *State v. Taylor,* 2006 WI 22, ¶ 17, 289 Wis. 2d 34, 710 N.W.2d 466 and *State v. Gallion,* 2004 WI 42, ¶ 17, 270 Wis. 2d 535, 678 N.W.2d 197). "A reconfinement hearing is certainly akin to a sentencing hearing and, therefore, both are reviewed on appeal to determine if there has been an erroneous exercise of discretion." *Brown,* 298 Wis. 2d 37, ¶ 20.

III

¶ 14. As a preliminary matter, while the issue before the court is moot because Walker has completed his reconfinement term and thus our decision will not affect the underlying controversy, we may at times consider a moot issue if it is of "great public importance or arises frequently enough to warrant a definitive decision to guide the circuit courts." *State ex rel. Riesch v. Schwarz,* 2005 WI 11, ¶ 12, 278 Wis. 2d 24, 692 N.W.2d 219. Because circuit courts regularly preside over reconfinement hearings, we review the issue at hand even though it is moot.

¶ 15. In short, we conclude that *Gee* misinterprets our decision in *Brown. Gee* places additional requirements on a circuit court judge. A circuit court is not required to read the original sentencing transcript in

677

every case.[7] Rather, the circuit court should be familiar with the case. It, however, can accomplish the requisite familiarity in a number of ways, and we acknowledge that this may differ from case to case. As articulated in *Brown,* the circuit court must decide which factors are relevant for consideration in any given case, and the circuit court must use its discretion as to how it ascertains the information needed to consider the relevant factors.

### A

■

¶ 16.    Our decision in *Brown* was the first time we set forth any guidelines regarding what factors a circuit court should consider at a reconfinement hearing. *Brown,* 298 Wis. 2d 37, ¶ 5. Our decision today should in no way be construed to alter the guidance set out in *Brown.* As stated in *Brown,* circuit court judges must give reasoned explanations for reconfinement decisions. *Id.,* ¶ 29. However, we do not "set forth a required checklist that must be followed in every instance." *Id.,* ¶ 45.

■

¶ 17.    In making a reconfinement decision, "we expect that circuit courts will usually consider [the recommendation from DOC,] the nature and severity of the original offense, the client's institutional conduct record, as well as the amount of incarceration necessary to protect the public from the risk of further criminal activity, taking into account the defendant's conduct and the nature of the violation of terms and conditions during extended supervision." *Id.,* ¶¶ 34, 45. "The

---

[7] We recognize that often circuit court judges do conduct such a review and such a review is often warranted.

reconfinement period imposed should be the minimum amount that is necessary to protect the public, to prevent depreciation of the seriousness of the offense, and to meet the defendant's rehabilitative needs." *Id.* Circuit courts may also consider " 'what balance of time between renewed incarceration and further [] [extended] supervision is most likely to protect society and at the same time to facilitate the violator's transition between prison and unconditional freedom.' " *Id.*, ¶ 35 (citation omitted). Other factors that may be relevant include "consideration of the defendant's record, attitude, and capacity for rehabilitation, and the rehabilitative goals to be accomplished by imprisonment for the time period in question in relation to the time left on the violator's original sentence." *Id.*, ¶ 36.

¶ 18.   We recognize that not all factors will apply in every case. *Id.*, ¶ 39. Accordingly, it is appropriate for the circuit court to "identify the general objectives of greatest importance, and describe the factors and circumstances relevant to those objectives." *Id.* "[I]t is within the circuit court's discretion to decide what weight should be given to a particular factor in a particular case," and the amount of requisite explanation will vary from case to case. *Id.* (citation omitted).

¶ 19.   As stated in *Brown,* the original sentencing transcript can be an important source of information regarding these factors and is generally readily available. *Id.*, ¶ 38. Information pertaining to the relevant factors may also be found in the court memo[8] or other

---

[8] The "Court Memo" is a document prepared by a "Probation/Parole Agent" from the Department of Corrections. It contains information pertinent to reconfinement such as: the

documents in the circuit court's file. Additionally, the prosecutor and defense counsel will often review the file, which includes the sentencing transcript, to prepare for the hearing. Both defense counsel and the prosecutor are certainly able to provide the circuit court with information pertaining to reconfinement and even direct the court to matters in the file relevant for review. In fact, in *Brown,* we urged "the prosecutor, defense counsel, and the defendant to bring to the court's attention any factors and circumstances, which may be particularly relevant to the guidelines discussed [in *Brown*]." *Id.,* ¶ 40. The parties are, therefore, encouraged to identify relevant information from the sentencing transcript or any other document and bring it to the circuit court's attention, so the judge may then specifically review that information.

¶ 20. While the circuit court may ascertain relevant information from a number of sources, we do not require that any one source or list of sources be utilized in every case. Rather, we merely require that the circuit court be familiar with the case before it. Ultimately, it is for the circuit court to determine the appropriate manner in which to accomplish this, and it may vary based upon the particular case.

¶ 21. In the case at hand, the circuit court did not erroneously exercise its discretion. While the judge could not recall whether he read the original sentencing transcript prior to the reconfinement hearing, the record reflects that the judge was familiar with the file, and he

relevant dates including the date of the offense, conviction, and release to extended supervision; violations of extended supervision; a Plotkin analysis; justifications for reincarceration; and a discussion of the underlying crime, institutional conduct record, and conduct while on extended supervision.

did give a reasoned explanation for his reconfinement decision. Moreover, the circuit court judge stated that it was his usual practice to review the sentencing court's comments and that he would review more of the hearing transcript if appropriate, but he could not recall whether he had done so in Walker's case.

## B

¶ 22. In *Gee,* the court of appeals relied on *Brown,* 298 Wis. 2d 37, ¶ 38, to conclude that the circuit court must review the original sentencing transcript every time it presides over a reconfinement hearing. *State v. Gee,* 2007 WI App 32, ¶ 15, 299 Wis. 2d 518, 729 N.W.2d 424. The court of appeals, in *Gee,* concluded that given the statement in *Brown* regarding the importance of sentencing transcripts, it was puzzled that the State, in *Gee,* would argue that the trial court need not review the original transcript. *Id.*

¶ 23. While we did emphasize the likely usefulness of the sentencing transcript in our *Brown* decision, we did not intend for that to be construed as a per se rule that circuit courts must read the original sentencing transcript before every reconfinement hearing. Rather, we leave it to the circuit court's discretion to determine which factors articulated in *Brown* are relevant, and we leave it to the circuit court to determine how best to ascertain information pertaining to the relevant factors. While it certainly may be good practice for the circuit court to review the sentencing transcript, it may not always be necessary, and therefore, we do not create a per se rule, but instead leave it to the trial court's discretion.

¶ 24. Accordingly, we overrule *Gee* to the extent that it creates a requirement that circuit court judges must read the original sentencing transcript prior to

681

every reconfinement hearing. Additionally, to the extent other cases call for such a requirement, we reject their directives.

¶ 25. Walker argues that regardless of whether *Gee* misinterpreted *Brown,* the rule established in *Gee* is reasonable. Walker asserts, "[t]he obligation that the new reconfinement judge review the relevant record, including the transcript of any prior hearings, is sound public policy and good common sense." We, however, reject a rigid approach that requires judges to read specific documents in every case, and instead, we leave it to the circuit court's discretion as to how it familiarizes itself with the file.

¶ 26. Walker, relying primarily on *State v. Reynolds,* argues that even pre-*Brown* court of appeals' decisions established that a circuit court must review the original sentencing transcript prior to a reconfinement hearing. We reject this argument. *Reynolds* was a sentencing after revocation of probation case and not a reconfinement hearing case. *State v. Reynolds,* 2002 WI App 15, 249 Wis. 2d 798, 643 N.W.2d 165. Moreover, *Reynolds* did not establish such a bright-line rule. *Id.,* ¶¶ 9–11, 13–15. Rather, *Reynolds* supports the conclusion that reviewing the original sentencing transcript may be necessary in some cases. *Id.* For example, in *Reynolds,* a review of the original sentencing transcript, in order to ascertain the severity of the original offense, was "essential to a fair sentencing after revocation." *Id.,* ¶ 11. To the extent that *Reynolds* even supports Walker's argument, the court of appeals seemingly had conflicting published decisions prior to *Brown* and *Gee.* *Compare Reynolds* with *State v. Jones,* 2005 WI App 259, ¶ 13, 288 Wis. 2d 475, 707 N.W.2d 876 (rejecting the defendant's argument that under *Reynolds,* a judge must review the original sentencing transcript prior to a

reconfinement hearing). Our decision today resolves any potential conflicts that existed at the court of appeals— no per se rule exists.

¶ 27.   Because we did not create a per se, rigid rule in *Brown* that the original sentencing transcript must be read every time, arguments about whether that "rule" applies retroactively are irrelevant and need not be addressed.

## IV

¶ 28.   We conclude that *Gee* misinterpreted our decision in *Brown*. A circuit court is not required to read the original sentencing transcript in every reconfinement hearing. Rather, the circuit court should be familiar with the particulars of the case at issue. That can be accomplished in any number of ways, and we acknowledge that this may differ from case to case. As articulated in *Brown,* the circuit court must decide which factors are relevant for consideration in any given case, and the circuit court must use its discretion as to how it ascertains the information needed to consider the relevant factors. Accordingly, we reverse the court of appeals' decision in this case and overrule *Gee*.

*By the Court.*—The decision of the court of appeals is reversed.