COURT OF APPEALS
DECISION
DATED AND FILED

May 30, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP830-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2011CF38

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

KEITH A. TALLEY,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Adams County: PAUL S. CURRAN, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. In this appeal, Keith A. Talley challenges the circuit court's order denying his postconviction motion seeking modification of the sentence that the court imposed after revocation of probation, based on the existence of two new factors. Talley argues that the substance of the transcript of the original sentencing hearing in 2014, which was not available at the time of the 2022 sentencing after revocation, as well as a psychosexual report completed after the 2022 sentencing after revocation and the testimony of its author, constitute new factors that warrant sentence modification. Talley requests that this court reverse the order denying his motion and remand to the circuit court to exercise its discretion to modify the sentence based on the new factors.[1]

¶2    We conclude that neither the substance of the sentencing transcript nor the psychosexual report and testimony constitute a new factor, and, accordingly, we affirm.

## BACKGROUND

¶3    In 2011, the State charged Talley with two counts of second-degree sexual assault, contrary to WIS. STAT. § 940.225(2)(c) (2023-24).[2] The information alleged that, in 2007, Talley had sexual contact "with a person who

---

[1] The Honorable Charles Pollex presided over Talley's original sentencing in 2014, and the Honorable Paul S. Curran presided over Talley's sentencing after revocation in 2022 and ruled on Talley's sentence modification motion in 2024. For ease of reference, we refer to Judge Pollex as "the sentencing court" and to Judge Curran as "the circuit court."

[2] The State originally charged Talley with one count of second-degree sexual assault and one count of making a visual representation of nudity, but the second count was later amended to another count of second-degree sexual assault.

All references to the Wisconsin Statutes are to the 2023-24 version, because the relevant statutes in effect at the time of Talley's offenses have not changed.

suffers from a mental illness or deficiency which renders that person … incapable of appraising the person's conduct." *See* § 940.225(2)(c).

¶4 In early 2013, Talley was found not competent to stand trial and, pursuant to a court order, was admitted to Winnebago Mental Health Institute for competency restoration. In November 2013, a staff psychiatrist noted that Talley was in the "borderline range of intellectual functioning," but opined that Talley had regained his competence to proceed to trial.

¶5 In 2014, pursuant to a plea agreement, Talley entered a plea of no contest to one count of second-degree sexual assault of a person who suffers from a mental deficiency, with the second count dismissed and read in. The sentencing court withheld sentence and placed Talley on probation for a period of ten years. In June 2022, Talley's probation was revoked for violations of his probation conditions. In July 2022, after a hearing, the circuit court sentenced Talley after revocation to ten years of initial confinement followed by five years of extended supervision.

¶6 In February 2024, Talley filed a motion for postconviction relief seeking modification of the sentence after revocation pursuant to WIS. STAT. RULE 809.30(2)(h), based on the existence of two new factors: the substance of the newly available transcript of the original 2014 sentencing hearing, and a January 2024 psychosexual report and expert testimony by the report's author.[3] In March 2024, the circuit court held a hearing on the motion and entered an order denying it, concluding that Talley had not demonstrated the existence of a new factor.

---

[3] Talley also sought a correction of the judgment of conviction to reflect additional sentence credit. This credit was granted and is not at issue on appeal.

¶7     Talley appeals.

## DISCUSSION

¶8     Talley renews the arguments presented in his postconviction motion, namely, that he is entitled to sentence modification based on two new factors: (1) new or previously overlooked information in the transcript of Talley's original sentencing hearing in 2014, which was not made part of the record before sentencing after revocation in 2022; and (2) new information or the correction of misinformation regarding Talley's risk to reoffend as explained in the 2024 psychosexual report and the author's testimony.

¶9     Circuit courts have inherent authority to modify criminal sentences when a defendant has demonstrated the existence of a "new factor." *State v. Schueller*, 2024 WI App 40, ¶26, 413 Wis. 2d 59, 10 N.W.3d 423.  A new factor is "'a fact or set of facts highly relevant to the imposition of sentence, but not known to the [circuit court] at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.'"[4] *State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (quoting *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975)).

¶10     Deciding a sentence modification motion based on a new factor is a two-step inquiry.  *Harbor*, 333 Wis. 2d 53, ¶36.  First, the defendant must

---

[4] While the definition of a "new factor" refers to facts not known at the "original sentencing," the parties do not argue, and our research does not disclose, any reason that a sentencing after revocation should be treated differently.  Accordingly, we proceed with the understanding that the "original sentencing" at issue here is the sentencing after revocation.

4

demonstrate the existence of a new factor by clear and convincing evidence. *Id.* We review this determination de novo. *Id.*, ¶33. To meet this burden, the defendant must show both that the fact or facts are "new," that is, that they were not known to the circuit court at the time of sentencing, and that the fact or facts are "highly relevant to the sentence imposed." *Schueller*, 413 Wis. 2d 59, ¶29. "Erroneous or inaccurate information used at sentencing may constitute a 'new factor' if it was highly relevant to the imposed sentence and was relied upon by the [circuit] court." *State v. Norton*, 2001 WI App 245, ¶9, 248 Wis. 2d 162, 635 N.W.2d 656.

¶11 Second, if the defendant demonstrates the existence of one or more new factors, the circuit court must exercise its discretion to determine whether that new factor justifies modification of the sentence. *Harbor*, 333 Wis. 2d 53, ¶37. An appellate court reviews this determination for an erroneous exercise of discretion. *Id.*, ¶33.

¶12 As we explain, we conclude that Talley has not established the existence of a new factor. Accordingly, we do not reach the second step of the new factor analysis. *See id.*, ¶38 ("[I]f a court determines that the facts do not constitute a new factor as a matter of law, … it need not determine whether, in the exercise of [] discretion, the sentence should be modified."). We first present additional background and then address the new factors asserted by Talley in turn.

## A. Additional Background

¶13 We relate in detail aspects of the original sentencing, sentencing after revocation, and postconviction motion proceedings because they are pertinent to our analysis of whether Talley has established that the substance of the original

2014 sentencing transcript and the 2024 psychosexual report and testimony are new factors.

### 1. Original 2014 sentencing

¶14    We begin with the original sentencing proceeding and relate pertinent details based on the transcript of that proceeding. As noted above, this transcript was not available at the 2022 sentencing after revocation but was subsequently prepared and used to support Talley's 2024 postconviction motion.

¶15    In their remarks at the sentencing hearing, counsel for both Talley and the State emphasized Talley's cognitive challenges. Talley's counsel told the sentencing court, "We really had two people here[, the victim and Talley,] who were low functioning." The prosecutor said that Talley "has, as we know, mental deficiencies. And they're outlined in the reports from the doctor. I think a great deal can be gleaned from the fact that [Talley] has served 267 days on an incompetency commitment…." At least in part because of Talley's cognitive challenges, the State recommended a withheld sentence, with ten years of probation.

¶16    In its sentencing remarks, the sentencing court first considered the gravity of the offenses, noting that the offenses with which Talley was charged were "gravely serious." Addressing Talley, the court went on to acknowledge "the evidence in the record … that you … have some challenges mentally and intellectually," but explained that "the pattern of behavior here is something which should be of concern to all of us." The court next considered protection of the public, noting that there were two ways of achieving this: confining Talley to jail or prison, or placing him on probation, "where you would have a supervising probation agent who would guide you, hopefully assist you in avoiding further

6

criminal conduct." The court continued: "[Y]ou're being given the benefit of the doubt. You're being sentenced to the least restrictive alternative as far as protecting the public from further violations." In conclusion, the court explained, "[T]he goals are to firstly protect the public. Secondly, to provide you with supervision, guidance that will hopefully enable you to make more proper choices in the future, and to impose a penalty which adequately reflects the seriousness of these charges." Consistent with the State's recommendation, the court withheld sentence and placed Talley on probation for a period of ten years.

### 2. 2022 sentencing after revocation

¶17    In June 2022, Talley's probation was revoked for violations of his probation conditions. The revocation summary, prepared by Talley's probation agent for the circuit court's consideration at the sentencing-after-revocation hearing, listed two specific violations as the basis for the revocation: "fail[ure] to comply with Sex Offender Treatment rules and expectations, resulting in [Talley's] termination from treatment"; and "intentional contact and conversations, in person, with minor females, on more than one occasion, telling the minor females that they were pretty and [that he] would like to date them." The summary also listed a number of other violations that had resulted in warnings, holds, and other sanctions short of revocation.

¶18    In addition to the violations, the revocation summary also referred to risk assessments completed by Talley's probation agent in 2014 and sex offender treatment provider in 2020. Specifically, the summary noted that, in 2020, Talley scored a Level III – Average Risk on the Static-99R, an actuarial risk assessment of a sex offender's risk of recidivism based on static factors, but that he was supervised at a higher level due to his dynamic and acute risk factors. These

dynamic and acute risk factors included supervision and treatment noncompliance, sexual deviance, sexual preoccupation, lack of emotional coping ability, impulsivity, mental health, and victim access. Talley's sex offender treatment provider opined that Talley was "in his assault cycle," and his probation agent opined that Talley was currently in "his offense cycle." The summary also mentioned an attempt to access adaptive sex offender treatment "for lower functioning individuals" and noted that Talley's "learning disability" and difficulty maintaining attention interfered with some participation in treatment. For all of these reasons, the summary concluded that "intensive sex offender treatment is needed in a confined setting." The Department of Corrections (Department) recommended that Talley be sentenced to five to six years of initial confinement followed by three to four years of extended supervision.

¶19 At the sentencing-after-revocation hearing in July 2022, the prosecutor referenced Talley's cognitive challenges when he was originally sentenced and currently, saying, "Talley[,] at the time [of original sentencing] …, was viewed as having somewhat of a diminished capacity, too, and that's a large reason why we afforded him the opportunity for supervision," noting that "that may still be the case." The prosecutor emphasized the need to protect the public, to punish Talley, and to get Talley intensive sex offender treatment, and asked the circuit court to adopt the Department's recommendation "with the higher end of the initial confinement."

¶20 Talley's sentencing-after-revocation counsel also discussed Talley's cognitive challenges, saying:

> [A]s the State already noted, … Talley is considered borderline functioning. That means he's not somebody who's considered completely cognitively challenged nor a person of normal functions. So they're in that borderline

8

area. So they usually are considered people who operate at a 70 to 80 IQ. He's also semi-illiterate and he has difficulty reading and writing and, most importantly, comprehending words and reading assignments and things of that nature.

….

Essentially, despite th[e] recommendation [that Talley be provided with more verbal assignments and one-on-one treatment], it took a long time … for the Department to find what's called adaptive sex offender treatment for someone like … Talley, because adaptive is required for someone with those challenges I just described, meaning he can't be in regular treatment and expect to respond or succeed as well as a person who doesn't have those challenges.

Counsel went on to explain that Talley continued to struggle with long written homework assignments in his sex offender treatment program, as he "cannot read and write very well. He operates a[t] a borderline functioning level…." Counsel also referenced that Talley was in his late 50s, that no one in the small town of Adams-Friendship had reported Talley talking to minor females, that Talley's statement after a polygraph was the only evidence against him at the revocation hearing, and that, despite the appearance of "a lot of holds and sanctions" in the revocation summary, they occurred over the course of eight years, and most of them occurred in the first two years of Talley's probation.

¶21 Counsel emphasized that Talley had already spent two and one-half years in the county jail for this offense and, therefore, was not "somebody who hasn't already been punished pretty well as a result of his actions." Counsel agreed with the Department and the prosecutor that Talley needed the intensive sex offender treatment program offered through the prison system and recommended that the circuit court follow the Department's sentencing

recommendation, "but on the five-year end of" initial confinement. Talley declined to address the court.

¶22 The circuit court began its remarks by noting that the legislature considered a violation of WIS. STAT. § 940.225(2)(c) to be a serious offense: it was designated as a class C felony and punishable by a maximum sentence of 40 years. The court also noted that it had reviewed the file from the beginning of the case to the present. The court discussed Talley's pattern of approaching minor females, even after he had been placed on GPS monitoring, as well as Talley's termination from sex offender treatment.

¶23 After reading from the revocation summary, the circuit court addressed the need to protect the public, noting in particular Talley's "grooming" behavior. Addressing the need for rehabilitation, the court described the ineffectiveness of the treatment offered while Talley was on probation and said that, as a result, "there obviously needs to be close rehabilitative control. And that rehabilitation, if it's even possible, has got to take place in prison." In addition to protection of the public and rehabilitation of the defendant, the court also emphasized the factor of deterrence, both for the public and for Talley himself.

¶24 Summarizing its remarks, the circuit court noted: "I think it is necessary that the sentence be long enough to allow the process of aging to reduce the danger presented by … Talley … until the passage of time and the aging processes make him less of an immediate threat to Adams County's children." Accordingly, the court sentenced Talley to ten years of initial confinement followed by five years of extended supervision, explaining, "I believe this is the minimum sentence that is consistent with the goals of protecting the public, the gravity of the offense, the need to punish and deter, and his rehabilitative needs."

### 3. 2024 postconviction motion

¶25 In his motion for postconviction relief, Talley argued that two "new factors" justified sentence modification: new or previously overlooked information in the transcript of Talley's original sentencing hearing, which was not made part of the record prior to sentencing after revocation, and new information or the correction of misinformation regarding Talley's risk to reoffend as explained in a new psychosexual report completed by Dr. Ryan Mattek. Specifically, Talley argued that the transcript contains "the sentencing court's comments and purpose in sentencing" Talley, which the circuit court was required to be but was not aware of at the sentencing after revocation. Talley also argued that the psychosexual report established that Talley's risk to reoffend and, therefore, his risk to the public, "was vastly overstated by [the Department] in [the] revocation summary." The State argued that both of Talley's challenges lacked merit.

¶26 The circuit court held a hearing on the motion, at which Dr. Mattek testified regarding his report, which was received into evidence. Mattek testified that, when he assessed Talley on the Static-99R, Talley's score put him at Level II – Below Average Risk. This is lower than the Level III – Average Risk, at which Talley was assessed in his revocation summary. However, Mattek explained that Talley's dynamic risk factors raised his recidivism risk to "above-average," which was higher than the Department's assessment. Mattek opined in his report that this made Talley "a prime candidate for sex offender treatment" because dynamic factors can be changed with treatment. In his testimony, Mattek also disputed the conclusion in the revocation summary that Talley "was in his offense cycle," explaining that if individuals are not mirroring the exact behaviors they were engaged in when they committed their earlier offenses, "it would be hard to tell" if they were in their offense cycles. Mattek opined that some of the treatment that

Talley received while on probation was "counterproductive" and countertherapeutic, and that Talley "did relatively well on probation" considering this. Finally, Mattek opined that Talley would be better treated in the community under "appropriate structure and accountability," and that long-term incarceration would not serve the purpose of protecting the public.

¶27 After hearing argument from the State and the defense, the circuit court denied Talley's motion for sentence modification, concluding that Talley had not demonstrated the existence of a new factor. Specifically, the court concluded that: (1) the sentencing transcript was not highly relevant to the imposition of sentence because the circuit court had all of the information that was available to the sentencing court at the sentencing after revocation, and the circuit court referred to the same sentencing factors as the sentencing court; and (2) Mattek's report and testimony could not be a new factor because they consist of opinions, not facts.

### B. Original Sentencing Transcript

¶28 On appeal, Talley argues, as he did in his postconviction motion, that the first new factor is "new or previously overlooked information regarding [his] original sentencing hearing in 2014." Specifically, Talley argues that the transcript of his original sentencing hearing in 2014 contains the sentencing court's purpose and rationale in sentencing Talley, which the circuit court was

required to but did not consider at the sentencing after revocation.[5] Talley identifies, as the new information contained in the transcript, the following two aspects of the sentencing court's sentencing decision: (1) the sentencing court's recognition as mitigating circumstances of Talley's "personal challenges due to his cognitive functioning"; and (2) the sentencing court's "primary purpose [] to protect the public in the least restrictive way possible." Talley concludes that there is nothing in the record that conveyed this information contained in the transcript to the circuit court at sentencing after revocation. We address these two aspects in turn.

¶29 *Cognitive challenges as mitigating circumstances.* While Talley accurately notes that the circuit court did not have access to the original sentencing transcript itself, the revocation packet and the sentencing-after-revocation transcript summarized above reveal that the circuit court was aware of Talley's cognitive challenges, was aware that the sentencing court was asked to consider those challenges as mitigating circumstances to support probation as the least restrictive option in 2014, and was itself asked to consider those challenges as mitigating circumstances to support at least the lower range of the sentence proposed by the Department in 2022. Accordingly, Talley's cognitive challenges—both that they exist and that they were in 2014 and remained in 2022

---

[5] At times in his appellant's brief, Talley suggests that it is the transcript of the original sentencing itself that is the new factor, and that the circuit court was required to review the transcript before sentencing Talley after revocation. However, a transcript is not itself a fact, although it may contain "a fact or set of facts" that may constitute a new factor. *Cf. Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975) (defining new factor as "a fact or set of facts"). And, in his reply brief, Talley concedes that case law has not established such a "bright-line rule." *See State v. Walker*, 2008 WI 34, ¶26, 308 Wis. 2d 666, 747 N.W.2d 673 ("[*State v. Reynolds*, 2002 WI App 15, 249 Wis. 2d 798, 643 N.W.2d 165 (2001)] did not establish such a bright-line rule," and "no per se rule exists.").

potential mitigating circumstances—cannot be a new factor because they were "known to the [circuit court] at the time of … sentencing." *See Rosado*, 70 Wis. 2d at 288; *Harbor*, 333 Wis. 2d 53, ¶58 (facts related to defendant's mental health are not a new factor because they were known to and considered by the sentencing court).

¶30 *Protecting the public in least restrictive way possible.* The sentencing-after-revocation transcript summarized above establishes that the circuit court focused on protecting the public in the least restrictive way possible, based not only on information that the sentencing court had in 2014 but also on information since that time. For example, the circuit court referred to the need to protect the public from Talley based on his admitted behavior, while on probation, of driving past a middle school to look at children and telling minor females "that he'd like to date them." The sentencing court's purpose and rationale based on the information before it in 2014, whether or not known to the circuit court, was not "highly relevant" to the circuit court's sentencing after revocation, because the circuit court considered and employed that same purpose and rationale, but based on Talley's entire file in 2022. *See Schueller*, 413 Wis. 2d 59, ¶29 (defendant must show that that the unknown fact or facts are "highly relevant to the sentence imposed"). Accordingly, the sentencing court's purpose and rationale in sentencing Talley, to protect the public in the least restrictive manner, is not a new factor.

¶31 Talley argues that the circuit court was required to "familiarize itself with the original sentencing reasons and explicitly acknowledge them on the record at sentencing after revocation" and that the court could not do so without the transcript of the original sentencing hearing. Talley supports this argument based on language in *State v. Reynolds*, 2002 WI App 15, ¶8, 249 Wis. 2d 798,

643 N.W.2d 165 (2001), stating that the record must show that a subsequent sentencing court "acknowledged or adopted the reasoning of the first" sentencing court.

¶32 We reject this argument for at least the following reasons. Our supreme court has clarified that *Reynolds* only "supports the conclusion that reviewing the original sentencing transcript may be necessary in some cases." *State v. Walker*, 2008 WI 34, ¶26, 308 Wis. 2d 666, 747 N.W.2d 673. Our analysis rejecting Talley's new factor challenge explains why the original sentencing transcript was not necessary in this case.

¶33 Relatedly, Talley does not connect this argument to the legal principles governing his new factor challenge. *Reynolds* did not involve a new factor challenge, *see Reynolds*, 308 Wis. 2d 666, ¶¶1-2, and Talley does not explain how its statement—that the subsequent sentencing court must acknowledge the reasoning of the first sentencing court—would apply in the new factor context. More specifically, Talley does not explain why the *Reynolds* statement applies when, as here, the information presented to the sentencing court was also presented to the circuit court and the reasoning of the sentencing court was not relevant to the sentencing decision of the circuit court.

¶34 In addition, *Reynolds* is easily distinguished. As noted, it did not involve a new factor challenge. Rather, the defendant, who was sentenced after revocation, challenged the harshness of the sentence. More specifically, the defendant argued that the subsequent sentencing court imposed a "severe" sentence without reviewing the testimony at the trial at which a jury found him guilty, the presentence investigation report prepared after that trial, or the first sentencing court's reasoning for imposing probation. *Id.*, ¶¶1-2. This court

agreed. *Id.*, ¶¶14-15. This court explained that the trial testimony, presentence investigation report, and sentencing comments conveyed "critical information" that was "essential to a fair sentencing after revocation" in that case. *Id.*, ¶¶11, 14. In contrast, to repeat, Talley has failed to show that the substance of the transcript of the original sentencing contains "critical information" essential to a fair sentencing here.

¶35 In sum on this issue, we conclude that the substance of the original sentencing transcript is not a new factor because Talley's cognitive challenges were known to the circuit court, and the sentencing court's focus on protecting the public in the least restrictive manner was not highly relevant to the sentence imposed by the circuit court.

## C. Psychosexual Report and Testimony

¶36 Talley argues on appeal, as he did in his postconviction motion, that the second new factor is "new information or the correction of misinformation related to [his] sex offender evaluations and risk level" as explained in the 2024 psychosexual report and the testimony of Dr. Mattek. Specifically, Talley asserts that the psychosexual report and testimony "demonstrated that his risk to reoffend sexually was vastly overstated by [the Department] in his revocation summary, and that the sentence imposed by the [circuit] court will not have the desired effect of further reducing his risk." We reject this argument for the following reasons.

¶37 Talley's argument is, in part, factually inaccurate. Mattek's report placed Talley's risk level at above-average, while the Department's summary stated that Talley's risk level was average. Both documents stated that Talley's dynamic and acute risk factors, those that he can change, placed him at a higher risk of recidivism compared to his static factors, which he cannot change. Thus,

Mattek's report did not show that the Department's summary overstated Talley's risk level.

¶38 Moreover, even if Mattek's report did dispute the Department's assessment of Talley's risk level, "the existence of a contradictory psychiatric report" generally does not constitute a new factor; instead, it merely "establishes that mental health professionals will sometimes disagree on matters" regarding risk assessment and treatment. *State v. Slagoski*, 2001 WI App 112, ¶11, 244 Wis. 2d 49, 629 N.W.2d 50, *overruled in part on other grounds by Harbor*, 333 Wis. 2d 53. Here, what Talley argues is a new fact or set of facts is precisely the type of disagreement on the appropriate assessment of risk rejected in the new factor analysis in *Slagoski*. *Id.* In other words, it is "an expert's opinion based on previously known or knowable facts." *See State v. Sobonya*, 2015 WI App 86, ¶7, 365 Wis. 2d 559, 872 N.W.2d 134. As summarized above, Mattek's report and testimony evidenced his disagreement with the opinions in the revocation summary, namely, that Talley was "in his offense cycle" and that any treatment needed to occur in prison. Talley provides no support for, and the language in the case law refutes, his assertion that such an opinion constitutes a new factor.

¶39 Talley cites *State v. Schueller*, 413 Wis. 2d 59, in support of his argument, but *Schueller* is readily distinguishable. In that case, Schueller was a veteran, and his posttraumatic stress disorder (PTSD) was "a major focus" of the sentencing hearing. *Id.*, ¶¶3, 9. Specifically, the circuit court stated that "Schueller's PTSD diagnosis 'aggravates the situation when you look at somebody in terms of their danger to the public'"; that Schueller would "'always have'" PTSD; and that he required a long period of confinement and "'would need to be on supervision for the balance of his life,' 'given [his PTSD] diagnosis.'" *Id.*, ¶¶13-14.

¶40 Nearly two decades later, Schueller filed a postconviction motion for sentence modification based on the new factor "that the availability of new, highly effective PTSD treatments had rendered PTSD in veterans highly treatable, and even curable," and attached an expert report on the topic. *Id.*, ¶¶15-16. This court concluded that Schueller presented a new factor. *Id.*, ¶37. We explained that the facts alleged in Schueller's motion, specifically, "that PTSD in veterans such as Schueller is now highly treatable, even curable, on an outpatient basis," which were undisputedly not known to the circuit court at the time of sentencing, are highly relevant to the imposition of sentence, based on the circuit court's sentencing comments that Schueller would always pose a danger to the community because the symptoms associated with his PTSD diagnosis would never be cured. *Id.*, ¶¶33-36.

¶41 Talley argues that, as in *Schueller*, he "proved that he is able to be rehabilitated through an adequate sex offender treatment program." This argument is unsupported by the facts and the law. As stated, the new factor in *Schueller* was the fact that PTSD in veterans was treatable and possibly curable, based on research performed after Schueller's sentencing. Unlike in *Schueller*, here, Talley has not presented any new facts, based on information not yet in existence at his sentencing after revocation, about the treatability or curability of his condition. Instead, Talley has presented only the opinion of an expert as to Talley's amenability to treatment, based entirely on facts that were in existence and known to the circuit court at sentencing after revocation. This is more analogous to the facts in *Slagoski*, in which a postconviction psychiatric report that opined that the defendant was not likely to reoffend, in contrast to opinions available to the court at sentencing, was not a new factor. *Slagoski*, 244 Wis. 2d 49, ¶¶1, 11. Accordingly, *Schueller* does not support Talley's argument.

¶42 Talley also argues that if Mattek's report and testimony are not a new factor because they are opinions, not facts, we would have concluded that Schueller did not present a new factor. However, as we have explained, unlike Talley here, Schueller presented an opinion that was based on new facts that did not exist at his original sentencing. As we have also explained, our conclusion in *Schueller* is consistent with our ruling in *Slagoski*, and Talley fails to show otherwise. *See Schueller*, 413 Wis. 2d 59, ¶44 (explaining how *Slagoski* is consistent with *Schueller*).

¶43 Talley also briefly asserts that he "had not before been properly evaluated with a full psychosexual examination by a qualified psychologist." However, he does not develop an argument beyond this conclusory assertion, and we address it no further. *See Wisconsin Conf. Bd. of Trs. of the United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶38, 243 Wis. 2d 394, 627 N.W.2d 469 (stating that we need not address arguments that are conclusory and undeveloped).

¶44 Talley makes additional arguments in his reply brief as to why Mattek's report was highly relevant to the imposition of sentence. Because we conclude that the report and testimony are not a new factor because they consist of opinions, not facts, we need not address whether they were highly relevant. *See Schueller*, 413 Wis. 2d 59, ¶29 ("[A] defendant is not entitled to sentence modification if the facts alleged in the motion do not constitute a new factor as a matter of law—either because they are not new, or because they are not highly relevant to the sentence imposed.").

¶45 In sum on this issue, we conclude that the psychosexual examination and report did not contain facts unknown to the circuit court at the time of

sentencing after revocation, and, accordingly, the psychosexual report and testimony are not a new factor.

## CONCLUSION

¶46    For the foregoing reasons, we conclude that Talley failed to demonstrate the existence of a new factor by clear and convincing evidence. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

20